**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| NCS MULTISTAGE INC., | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 6:20-cv-00277-ADA |
| vs. | § § § | |
| NINE ENERGY SERVICE, INC., | § § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT NINE ENERGY SERVICE, INC.'S
<u>OPPOSED MOTION TO TRANSFER VENUE</u>**

**TABLE OF CONTENTS**

                                                                                                                          **Page**

**INTRODUCTION** ............................................................................................................................... 1

**LEGAL STANDARD** ....................................................................................................................... 2

**ARGUMENT** ..................................................................................................................................... 3

    A.    The relative ease of access to sources of proof weighs against transfer ................ 3

            1.    Access to witnesses weighs against transfer .............................................. 3

            2.    Access to documents weighs against transfer ............................................ 6

    B.    The availability of compulsory process to secure witnesses weighs against transfer ................................................................................................................... 8

    C.    The cost of attendance for willing witnesses weighs against transfer ................... 9

            1.    The cost of attendance of party witnesses is neutral ................................. 9

            2.    The cost of attendance of non-party witnesses weighs against transfer ...................................................................................................... 10

    D.    All other practical problems that make trial of a case easy, expeditious, and inexpensive weighs heavily against transfer ................................................. 11

    E.    Administrative difficulties flowing from court congestion weighs against transfer ................................................................................................................. 13

    F.    Local interest weighs heavily against transfer ...................................................... 14

    G.    The parties agree that the remaining two factors are neutral ............................... 15

**CONCLUSION** ............................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Cameron Int'l Corp. v. Nitro Fluids L.L.C.*,
   6:20-cv-00125-ADA, 2020 U.S. Dist. LEXIS 10240 (W.D. Tex. June 16,
   2020) ..................................................................................................................................14, 15

*DynaEnergetics Eur. GmbH v. Hunting Tital, Inc.*,
   6:20-cv-00069-ADA, 2020 U.S. Dist. LEXIS 105241 (W.D. Tex. June 16,
   2020) ..................................................................................................................................10

*Fintiv, Inc. v. Apple Inc.*,
   6:18-cv000372-ADA, 2019 U.S. Dist. LEXIS 171102 (W.D. Tex. Sept. 10,
   2019) ..................................................................................................................................4, 7

*Hammond Dev. Int'l, Inc. v. Google LLC*,
   1:20-cv-00342-ADA, 2020 U.S. Dist. LEXIS 110984 (W.D. Tex. June 24,
   2020) ..................................................................................................................2, 3, 10, 11

*In re Adobe, Inc.*,
   No. 2020-126, slip op. (Fed. Cir. Jul. 28, 2020) ................................................................13, 14

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)..........................................................................................9, 13

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010)..............................................................................................12

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ..................................................................................................2

*SynKloud Techs., LLC v. Dropbox, Inc.*,
   6:19-cv-00525-ADA, 2020 U.S. Dist. LEXIS 84958 (W.D. Tex. May 14,
   2020) ..................................................................................................................8, 10, 12

*Turner v. Cincinnati Ins. Co.*,
   No. 6:19-cv-00642-ADA, 2020 U.S. Dist. LEXIS (W.D. Tex. Jan. 14, 2020) ........................8

*Uniloc 2017 LLC v. Apple Inc.*,
   6-19-cv-00532-ADA, 2020 U.S. Dist. LEXIS 109037 (W.D. Tex. June 19,
   2020) ..................................................................................................................3, 4, 5, 7

*Voxer Inc. v. Facebook, Inc.*,
   6:20-cv-00011-ADA, 2020 U.S. Dist. LEXIS 109038 (June 22, 2020)..................9, 10, 11, 13

**Statutes**
28 U.S.C. § 1404(a) ...........................................................................................................2, 9

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................................................2, 9

**INTRODUCTION**

Nine Energy Service, Inc. ("Nine") has a heavy burden to show that the SDTX is *clearly* a more convenient forum than the WDTX. Nine cannot carry this burden because none of the convenience factors weigh in favor of transfer.

The WDTX is the right venue. This district has a substantial local interest in this case because of both parties' substantial presence in this district and because substantial infringement is occurring in the WDTX, including by Nine's customers. Furthermore, judicial economy favors keeping this case in Texas because it is set for trial in October 2021, and NCS Canada has filed five other suits in this Court that have proper venue and can be consolidated with this suit.

This lawsuit is not a "a dispute between Houstonians" where "the vast majority of information is available in Houston," including "nearly all party witnesses," as Nine would have you believe. Plaintiff NCS Multistage Inc. ("NCS Canada") is a Canadian company headquartered in Calgary with a related company in Houston ("NCS US"). Nine is a global company, with a substantial presence in the WDTX. Highly relevant party and non-party witnesses are located outside of the SDTX, including in the WDTX, EDTX, and Canada. Those witnesses include (i) Nine's employees who Nine admits are selling the accused product out of Midland, (ii) Nine's customers conducting infringing drilling operations in the Permian Basin or Eagle Shale Ford Play at Nine's direction,[1] (iii) NCS Canada's CEO and corporate witness who lives in the WDTX, (iv) five non-party inventors out of the six named inventors of the asserted patent that live in Canada, four of whom have signed declarations that Waco is convenient,[2] and

---

[1] The Permian Basin is a shale basin spanning west Texas and southeast New Mexico. The Eagle Ford Shale Play is shale formation extending from southwest to east Texas. *See* Ex. A.

[2] There are six named inventors on the asserted '445 Patent. Four of them in Canada have submitted a declaration stating that if they attend trial, it makes no difference to them to travel to

(v) the remaining non-party inventor, Travis Harris who lives in the EDTX.[3]  For all these witnesses, Waco is either more convenient or as convenient as Houston.  While Nine identifies three potential witnesses in the SDTX, it does not explain why they would be witnesses at trial or how these witnesses make Houston more convenient when considering on balance the key witnesses outside the SDTX.

There is no reason to transfer this case to Houston.  Nine's motion should be denied.

## LEGAL STANDARD

A district court may transfer a civil action to another district or division where it might have been brought without the consent of both parties, only if the movant can meet its heavy burden to show that the transferee venue is *clearly* more convenient.  *Hammond Dev. Int'l, Inc. v. Google LLC*, 1:20-cv-00342-ADA, 2020 U.S. Dist. LEXIS 110984, at *5, 16 (W.D. Tex. June 24, 2020) (Albright, J.).  If the movant cannot show that the transferee venue is *clearly* more convenient, the plaintiff's choice of venue should be respected.  *See id.*, at *5; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must…clearly demonstrate that a transfer is 'of the convenience of the parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).  Courts may consider undisputed facts outside the pleadings and must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.  *Hammond*, 2020 U.S. Dist. LEXIS, at *5.

---

Waco versus Houston.  The fifth of these inventors in Canada stated it would make no difference to him to travel to Waco versus Houston, but NCS was not able to complete a declaration from him to this effect by the deadline for filing this brief.

[3] The sixth named inventor, Travis Harris, does not reside in Houston, as Nine alleges, he resides in Lindale, Texas, which is closer to Waco.

2

# ARGUMENT

Discussed below are the factors Courts consider in determining whether a case should be transferred based on convenience. Those factors show this case should not be transferred.

**A. The relative ease of access to sources of proof weighs against transfer.**

In considering relative ease of access to sources of proof, this Court looks to accessibility to witnesses and accessibility of documents and physical evidence. *See Hammond*, 2020 U.S. Dist. LEXIS, at *6-8.

    1. <u>Access to witnesses weighs against transfer.</u>

"When determining the weight and impact of the location of witnesses, this Court looks at the totality of the circumstances, including but not limited to, 'the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, etc.'" *Uniloc 2017 LLC v. Apple Inc.*, 6-19-cv-00532-ADA, 2020 U.S. Dist. LEXIS 109037, at *32 (W.D. Tex. June 19, 2020) (Albright, J.). Here, many potential and key trial witnesses are outside the SDTX, including in the WDTX, EDTX, and Canada. Therefore, Waco is more convenient than or just as convenient as Houston for those witnesses.

**Witnesses in WDTX.** NCS Canada alleges that Nine infringes United States Patent No. 10,465,445 ("the '445 Patent") apparatus claims by selling the accused BreakThru™ Device, and by inducing infringement of the '445 Patent method claims by encouraging its customers to use the BreakThru™ Device. Dkt. 1 at ¶¶ 19-20. Nine admits that sales in Texas of the BreakThru™ Device alone account for nearly a quarter of all global BreakThru™ Device sales. Dkt. 24-1 at ¶ 17. Nine is a global company with at least seven offices in the WDTX, four of which are in Midland servicing the Permian Basin and likely Eagle Ford Shale Play. *See* Ex. B

3

(Nine's SEC Filing) (annotated) at 11, 63.  Nine admits that its "Midland office does facilitate sales and support of the BreakThru™ Device…"  *See* Dkt. 24 at 6.  It also touts that its field offices, like its Midland offices, serve as the "boots on the ground" primary point of contact between the company and its customers, including conducting downhole tool sales and services.  Ex. B at 9.  Nine's substantial presence in the WDTX is not surprising as that is largely where Texas drilling happens.  Nine, like many other downhole tool companies, has corporate offices in Houston.  But Nine would have this Court ignore that it has operations in the WDTX because that's where the oil and gas activity is.  Oil and gas operations in Texas almost exclusively occur in the Permian Basin and Eagle Ford Shale Play.  Thus, relevant defendant witnesses are in the WDTX.  Waco, which is 320 miles from Midland, is a more convenient location for these witnesses than Houston, which is 478 miles away.  *See* Ex. C (Decl. LLagostera) ¶ 4(a).

Moreover, Nine is inducing its customers to infringe the '445 Patent in the WDTX out of its Midland offices.  Wells are not drilled in Houston, they are drilled in the WDTX including in the Permian Basin and Eagle Shale Ford.  In other words, substantial infringing uses of the BreakThru™ device are surely occurring by Nine's customers in the WDTX.  Testimony from those customers will be necessary to verify that all steps of the asserted method claims are being performed, unless Nine admits those customers are performing those steps.  *See Uniloc*, 2020 U.S. Dist. LEXIS, at *32 (noting this Court considers whether the testimony of a witness goes to an element of a claim); *Fintiv, Inc. v. Apple Inc.*, 6:18-cv000372-ADA, 2019 U.S. Dist. LEXIS 171102, at *10 (W.D. Tex. Sept. 10, 2019) (Albright, J.) (acknowledging that defendant's employees would have knowledge that would support plaintiff's indirect infringement claim).  Thus, relevant non-party witnesses are in the WDTX and Waco is more convenient for them.

Furthermore, NCS Canada anticipates having CEO Robert Nipper testify as a corporate

witness at trial. Ex. D (Decl. Nipper) at ¶ 3. Mr. Nipper resides in Burnet, Texas, which is in the WDTX and ~100 miles from the Waco Courthouse, versus ~200 miles from Houston, and he would prefer travel to Waco than to Houston. *Id.* at ¶ 4; Ex. C at ¶ 4(b).

Waco is a clearly a more convenient forum than Houston for all of these potential party and non-party witnesses located in the WDTX.

**Witnesses in EDTX.** Nine claims Houston is more convenient because Travis Harris, a non-party and the sixth named inventor of the '445 Patent, resides in Houston. Dkt. 24 at 8. But Mr. Harris lives in Lindale, Texas, which is in the EDTX and closer to Waco than Houston by ~74 miles. Ex. E; Ex. C at ¶ 4(c).

**Witnesses in Canada**. The inventions disclosed in the '445 Patent were conceived of and reduced to practice in Canada. Four named inventors are Canadian non-party witnesses and all reside in or around Calgary.[4] *Id.* These four have submitted a declaration in support of this response showing that Waco is convenient.[5]

**Witnesses identified by Nine.** The only party witnesses that Nine identifies by name who actually live in the SDTX are Don McLean, Nine's regional sales manager for the BreakThru™ device, and Stephanie Sloma, Nine's controller for the BreakThru™ device. Dkt. 24-1 at ¶ 21. Nine has not identified any relevant testimony these persons could provide and has not stated whether they are likely to testify at trial. *See Uniloc*, 2020 U.S. Dist. LEXIS, at *32 (noting this Court considers whether a witness has relevant information and is likely to testify at

---

[4] Ex. F (Decl. Devlin) at ¶ 4; Ex. G (Decl. Getzlaf) at ¶ 4; Ex. H (Decl. Ravensbergen) at ¶ 4; Ex. I (Decl. Stromquist) at ¶ 4.
[5] Ex. F at ¶ 6; Ex. G at ¶ 6; Ex. H at ¶ 6; Ex. I at ¶ 6. The fifth named inventor in Canada stated that it would make no difference to him to travel to Waco versus Houston, but NCS was not able to complete a declaration from him to this effect by the deadline for this brief.

trial). The only non-party witnesses that Nine identifies by name who *purportedly* live in the SDTX are Travis Harris, an inventor of the '445 Patent, and OFS International, LLC a third-party manufacturer of *some* BreakThru™ devices. Dkt. 24 at 6-7. But again, Mr. Harris does not live in the SDTX, he lives in Lindale. *See* Ex. E. And as for OFS, Nine has not identified any relevant testimony OFS can provide at trial, nor why OFS would be called to testify at trial. In any case, Nine has failed to meet the heavy burden of showing these party and non-party entities they have identified make Houston *clearly* more convenient than Waco considering all of the other key witnesses that live outside the SDTX and for whom Waco is more or just as convenient.

In sum, NCS Canada has specifically identified four non-party witnesses and one party witness for NCS Canada for whom the WDTX is at least as convenient or more convenient than the SDTX. Additionally, there are Nine witnesses and many other third-party witnesses located in the WDTX. Nine has only identified two party witnesses in Houston and two non-party witnesses for whom SDTX is allegedly more convenient. Nine has not identified relevant testimony of the party witnesses. For the two non-party witnesses, one lives closer to Waco, and the need for the other is questionable. Therefore, this factor weighs against transfer.

2. Access to documents weighs against transfer.

Nine argues that this factor weighs in favor of transfer for two reasons: (1) Nine "expects" that NCS Canada's documents reside in Houston; and (2) Nine's documents reside in or are accessible from Houston. Neither argument has merit.

**NCS Canada's relevant documents are largely in Canada:** Nine's expectation that NCS Canada's documents are all in Houston is wrong. Dkt. 24 at 5. NCS Canada is

headquartered in Calgary.[6]  The inventions disclosed in the '445 Patent were conceived of and reduced to practice by NCS Canada in Canada primarily by Canadian inventors.  *See supra* at 5.  NCS Canada's AirLock® System, which is a commercial embodiment of the '445 Patent, was designed in Canada and originally built in Canada.  Ex. J at ¶ 10.  NCS Canada is responsible for engineering and research and development activities for its parent company.  Ex. K at 32.  Thus, highly relevant technical documents and physical evidence are primarily located in Canada.  Ex. J at ¶ 11.  In fact, this Court's Order Governing Patent Proceedings required NCS Canada to produce all conception and reduction to practice documents, and that search and collection occurred in Canada using Canadian personnel and searching primarily files in Canada.  *Id.* at ¶ 12.  Relevant documents from this collection came from servers in Canada. *Id.* at ¶ 12.

**Nine admits that key documents are in the WDTX**: Nine has not argued that the majority of its documents are physically located in Houston.  Rather, Nine states that because "nearly all evidence *is accessible* from Houston, factor 1 strongly weighs in favor of transfer."  Dkt. 24 at 5 (emphasis added).  But as this Court has held, the relevant inquiry under Fifth Circuit precedent is the <u>physical location</u> of the documents, not where documents are accessible from.  *Fintiv*, 2019 U.S. Dist. LEXIS, at *12 (noting that though documents may be equally accessible from both districts, "under current Fifth Circuit precedent, the physical location of electronic documents does affect the outcome of this factor."); *Uniloc*, 2020 U.S. Dist. LEXIS, at *29 (W.D. Tex. June 19, 2020) (lamenting that though documents are accessible with the click of a mouse, "until the Fifth Circuit addresses the reality previously discussed, trial courts must

---

[6] NCS Canada is headquartered in Calgary and is affiliated with NCS Multistage, LLC ("NCS US") in Houston, Texas, which is responsible for US operations. Ex. J (Decl. Mueller) at ¶ 6-7; Ex. K (NCS Multistage Holdings, Inc. SEC Filing) at Exhibit 21.1.  NCS Canada and NCS US share the same ultimate parent, NCS Multistage Holdings Inc. *Id.*  NCS Canada and NCS US share corporate executives and are collectively referred to herein as "NCS." Decl. Mueller at ¶ 7.

7

continue to apply this factor consistent with current precedent."). Nine has relevant documents located in the WDTX.

Nine admits that the Midland office facilitates sales and support of the infringing device and has relevant documents. Dkt. 24 at 6. By Nine's admission, its sales documents, operation documents, technical documents, field notes, and non-electronically stored information should be at its Midland facilities. Nine's argument that this "should not affect the convenience analysis, as the distance from the Midland office to the Waco courthouse is over 250 miles" makes no sense. *Id.* The distance from Midland to the Houston courthouse is 478 miles, so Waco is the convenient mid-point forum between WDTX and Houston. Ex. C at ¶ 4(a).

Because Waco is the most convenient forum for both access to witnesses and documents, the first factor weighs against transfer.

**B. The availability of compulsory process to secure witnesses weighs against transfer.**

"The next factor the Court considers is the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *SynKloud Techs., LLC v. Dropbox, Inc.*, 6:19-cv-00525-ADA, 2020 U.S. Dist. LEXIS 84958, at *10 (W.D. Tex. May 14, 2020) (Albright, J.). This factor carries far less weight when the movant has not alleged or shown that any witnesses are unwilling to testify. *Turner v. Cincinnati Ins. Co.*, No. 6:19-cv-00642-ADA, 2020 U.S. Dist. LEXIS, at *8 (W.D. Tex. Jan. 14, 2020) (Albright, J.).

Nine has not identified any non-party witness in the SDTX that would actually be a trial witness and is unwilling to testify in Waco, and so this factor weighs against transfer. *See id.* ("In fact, the compulsory process factor weighs against transfer when neither side claims a witness would be unwilling to testify… When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor.").

8

The only non-party witnesses Nine has identified are Travis Harris and OFS International. Dkt. 24 at 6-7. But Travis Harris resides in the EDTX, so he is not within the absolute subpoena power of the SDTX. And Nine does not express any intention to call OFS International at trial, but rather states "to the extent NCS seeks information about the manufacture of the BreakThru™ Device, that information **could be sought** through non-party OFS International, LLC." *Id.* at 7 (emphasis added). If NCS Canada requires information about manufacturing, it would seek this information from Nine, not from OFS International. There is no reason to believe that Nine does not have the manufacturing information that might be sought. As a third-party manufacturer, OFS is an unlikely trial witness.

## C.  **The cost of attendance for willing witnesses weighs against transfer.**

The single most important factor in the transfer analysis is the cost of attendance of willing witnesses. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1343.

1. <u>The cost of attendance of party witnesses is neutral.</u>

Nine first argues that "most of the relevant witnesses from both parties work and reside in Houston."[7] Dkt. 24 at 7. But that is not true. NCS Canada foresees one party witness for the Plaintiff, its CEO Robert Nipper. Ex. D at ¶ 3. Mr. Nipper lives in the WDTX roughly 100 miles from this Courthouse. *Id.* at ¶ 4; Ex. C at ¶ 4(b). Further, Nine's employees in Midland

---

[7] This Court has treated argument based on the convenience of the non-movant with skepticism. *Voxer Inc. v. Facebook, Inc.*, 6:20-cv-00011-ADA, 2020 U.S. Dist. LEXIS 109038, at *15 (June 22, 2020) (Albright, J.) ("Typically, this Court has some skepticism when the party who is arguing that a case should be transferred relies on the lack of convenience for the relevant witnesses that will be called by the party who filed the suit in this venue.").

9

that Nine admits sell the accused BreakThru™ device and support customers who are conducting infringing uses of the accused device are in the WDTX and much closer to Waco.  Nine has only identified by name one party witness in Houston—Don McLean.  Dkt. 24-1 at ¶ 21.  The other party witnesses identified by Nine reside outside of Houston, including Stephanie Sloma in Corpus Christi, and Nick Pottomeyer in Ohio.  *Id.*  When party witnesses are located within both districts and outside both districts, this does not weigh for or against transfer.  *See Voxer*, 2020 U.S. Dist. LEXIS, at *15-16 ("…[T]he cost of attendance of party witnesses does not weigh for or against transfer because there appear to be several potential witnesses in both NDCA and WDTX, as well as outside either District."); *SynKloud*, 2020 U.S. Dist. LEXIS, at *5 (holding the same).  Further, while Nine states that its party witnesses outside of Houston regularly travel to Houston for business, regularity of travel does not eliminate cost of travel for these witnesses.  Dkt. 24 at 6-7; *see DynaEnergetics Eur. GmbH v. Hunting Tital, Inc.*, 6:20-cv-00069-ADA, 2020 U.S. Dist. LEXIS 105241, at *23 (W.D. Tex. June 16, 2020) (Albright, J.) ("…but the Court does not equate the regularity of travel to the WDTX with the ease of access to the sources of proof.").

Because the cost of attendance of party witnesses is given little weight and there are party witnesses in both districts and outside both districts, the cost of attendance of party witnesses is neutral.  *See Hammond*, 2020 U.S. Dist. LEXIS, at *12 ("…the cost of attendance of party witnesses does not weigh for or against transfer because there appear to be several potential witnesses in both districts. In any case, courts give the convenience of party witnesses little weight.").

    2.  <u>The cost of attendance of non-party witnesses weighs against transfer.</u>

Nine argues that the WDTX is more costly for non-parties Mr. Harris and OFS, who

would have to travel to Waco from Houston.  Dkt. 24 at 8.  But Mr. Harris lives closer to Waco than Houston.  Ex. E; Ex. C at ¶ 4(c).  And OFS, a third-party manufacturer of the accused device, is an unlikely trial witness.  Other than saying OFS is a manufacturer, Nine has not identified any testimony that would be needed from OFS.  *See Voxer*, 2020 U.S. Dist. LEXIS at *16 (denying transfer where, *inter ali*a defendant did "not specify how the [third-party] would have relevant information that [defendant] does not have access to."); *Hammond*, 2020 U.S. Dist. LEXIS, at *12-13 (noting that this factor does not weigh for or against transfer as to witnesses who are unlikely to testify).

Further, Nine ignores numerous other potential and key non-party witnesses, including its customers who are engaging in infringing uses of the accused BreakThru™ device in the WDTX.  For these witnesses, Waco is the closer forum.  Ex. C at ¶ 4(a).  Nine also ignores the first five named inventors of the '445 Patent who all live in Canada.  Four of these Canadian non-party witnesses have declared Waco is not an inconvenience, and in any case the cost difference between a flight to Houston versus Waco is not significant.  *See supra* at 5; *Voxer*, 2020 U.S. Dist. LEXIS, at *16 ("Likewise, the cost of attendance of Voxer is also neutral because regardless of the District, the witnesses will have to travel over 1,000 miles.").

Because the cost of attendance of party witnesses is neutral and the cost of attendance of non-party witnesses weighs against transfer, this factor weighs against transfer.

### D. All other practical problems that make trial of a case easy, expeditious, and inexpensive weighs heavily against transfer.

Between July 9, 2020 and August 13, 2020, NCS Canada filed five additional suits in this Court asserting the '445 Patent against eight companies.[8]  Venue is proper in this district for

---

[8] *See* Civil Action Nos. 6-20-cv-00622-ADA, 6-20-cv-00699-ADA, 6-20-cv-00700, 6-20-cv-00700-ADA, 6-20-cv-00701-ADA, and 6-20-cv-00735-ADA.

11

these cases. Defendant TCO AS is a Norwegian company[9] and not subject to the patent venue statute. Defendant Arsenal is a Texas corporation with an office in Midland, TX.[10] Defendant Permian Petrolink is headquartered in Midland, TX.[11] Defendant Summit Casing has offices in Midland, TX and San Antonio, TX.[12] Defendants Packers Plus and Packers Plus US have offices in Midland, TX.[13] Upon information and belief, Defendant Allamon has an office in Midland, TX. Like Nine, these companies are selling infringing tools in the WDTX, and inducing customers to infringe in the Permian Basin and Eagle Ford Shale Play. These suits are in the pleading stage and can be consolidated with this suit against Nine for efficiency. *SynKloud*, 2020 U.S. Dist. LEXIS, at *17 ("A parallel action in this District involving the same patent weighs heavily in the transfer analysis. Though this factor is not dispositive, judicial economy favors having the infringement of the same patent considered by one judge.") (internal citations omitted)); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (noting that "the fact that there is co-pending litigation before the trial court involving the same patent and underlying technology, provides substantial justification for maintaining the suit in [the transferor forum].").

Nine argues that this case should be transferred because Defendants in the related litigations will likely move to transfer their cases to the SDTX. Dkt. 24 at 9-10. Nine's argument must be ignored because it is based on compound speculation. First, Nine is speculating that the other eight defendants will all move to transfer their cases. Second, Nine must also speculate they would all be successful in their motions. That is highly unlikely

---

[9] *See* http://www.tcogroup.com/contact/category10.html.
[10] *See* https://www.arsenalco.com/locations/.
[11] *See* https://permianpetrolink.com/.
[12] *See* https://summitcasing.com/locations/.
[13] *See* https://packersplus.com/contact/.

because those defendants have a substantial presence in the WDTX and are engaging in infringement in the WDTX.

Further, Nine argues this factor is neutral because the case is in preliminary stages and no scheduling order has been entered. Dkt. 24 at 9. But the parties agreed to a scheduling order with a *Markman* date of January 14, 2021 and a trial date of October 18, 2021, and the Court entered this scheduling order on August 1, 2020. Dkt. 25 at 2-3. This scheduling order compressed the Court's already expedited patenting scheduling order by over 10 weeks. *Id.* at 3. The order does not permit discovery until after *Markman*, which will significantly reduce costs for both parties and the Court. *Id.* at 2.

Because of the pendency of five related cases in this district and the expeditious scheduling order agreed to by the parties and entered by the Court, this factor weighs heavily against transfer.

### E.  Administrative difficulties flowing from court congestion weighs against transfer.

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Here, the parties agreed to a trial date of October 18, 2021 in a scheduling order submitted to the Court, which the Court entered. Under the Court's scheduling order, this case will be resolved within *18 months*, which is a full five months faster than the SDTX's average resolution time of 23 months cited by Nine. Thus, this factor weighs against transfer. *Voxer*, 2020 U.S. Dist. LEXIS, at *19 ("As such, because the time to trial will be shorter in this District, the Court finds that this factor weighs against transfer.").

Nine cites to *In re Adobe*, which cautioned courts against analyzing this factor based on a court's perceived ability to more quickly schedule trial. Dkt. 24 at 10; *In re Adobe, Inc.*, No. 2020-126, slip op. at 7-8 (Fed. Cir. Jul. 28, 2020). But there is nothing theoretical about this

13

Court's ability to more quickly schedule trial, as it has already been scheduled for October 18, 2021.  And *In re Adobe* held that this "factor concerns whether there is an appreciable difference in docket congestion between the two forums."  *In re Adobe*, No. 2020-126, at 7-8.  By Nine's own math, which indicates that the difference in average resolution time between the SDTX and WDTX cases is less than two months, there is no appreciable difference in docket congestion between the WDTX and SDTX.  Dkt. 24 at 10.

**F.  Local interest weighs heavily against transfer.**

Nine cites to *Mimedx* to argue that the relevant community in this factor "is the division, not the wider district as a whole."  Dkt. 24 at 8.  But this Court rejected this identical argument in *Cameron*, noting that *Mimedx* "specifically dealt with an intra-district transfer rather than an inter-district transfer" and holding "the transferor and transferee districts are relevant for the consideration of this factor."  *See Cameron Int'l Corp. v. Nitro Fluids L.L.C.*, 6:20-cv-00125-ADA, 2020 U.S. Dist. LEXIS 10240, *29-30 (W.D. Tex. June 16, 2020) (Albright, J.).

The WDTX has a heavy interest in this case because, as explained above, Nine has a substantial physical presence in the WDTX and that is where a substantial portion of infringement is occurring, including Nine's infringing sales of the accused BreakThru™ device, and Nine's inducement of its customers to infringe in the Permian Basin and Eagle Ford Shale Play.  Nine has at least seven facilities in the WDTX and employs 102 individuals in its four Midland facilities alone, and Nine does not disclose how many additional individuals it employs in the remaining three facilities in the WDTX.  In contrast, Nine has only two offices and 80 employees in the SDTX.  Dkt. 24-1 at ¶¶ 8, 13; Ex. B at 63.  And though Nine states that 47% of its customers have corporate headquarters in Houston, these customers likely have numerous employees in the WDTX where drilling occurs who are infringing the '445 Patent in the WDTX.  Dkt. 24 at 9.  Similarly, NCS has a substantial presence in the WDTX, including many customers

who conduct drilling operations in the Permian Basin and Eagle Ford Shale Play and an office in Odessa which employs 13 individuals who permanently or periodically work out of this office. These include employees who sell and service the AirLock® System, which is covered by the '445 Patent.  Ex. J at ¶¶ 8-9.  And, NCS's CEO resides in the WDTX.  Ex. D at ¶¶ 3-4.

Finally, Nine argues that Houston has an interest in this case because NCS Canada is headquartered in Houston, Travis Harris lives in Houston, and non-party OFS is in Houston. Dkt. 24 at 9.  But NCS Canada is headquartered in Canada, Travis Harris resides in Lindale, which is in EDTX, and non-party OFS is an unlikely trial witness.  Ex. J at ¶ 6; Ex. E; *see Moskowitz Famil Llc v. Globus Med.*, 6:19-cv-00672, 2020 U.S. Dist. LEXIS, at *8, 18 (W.D. Tex. July 2, 2020) (Albright, J.) (dismissing the significance of a third-party supplier of the infringing product where defendant could not identify relevant testimony of the third-party).

Based on both parties' significant presence in the WDTX, this factor weighs heavily against transfer.  *See Cameron*, 2020 U.S. Dist. LEXIS, at *30 (finding this factor weighed against transfer where infringement was occurring in the WDTX, even though both parties were headquartered in Houston and the patents were invented in Houston, because "the Court cannot overlook the substantial presence and activity of both [parties] in the WDTX.").

**G.  The parties agree that the remaining two factors are neutral.**

The parties agree that factors 7 and 8 neutral.  Dkt. 24 at 10.

## CONCLUSION

Because the first six convenience factors weigh against transfer and the parties agree the last two factors are neutral, Nine has not carried its heavy burden of showing Houston is *clearly* more convenient.  NCS Canada's choice of venue should be respected and Nine's motion be denied.

15

Date: August 21, 2020    Respectfully submitted,

**BLANK ROME LLP**

*/s/ Domingo M. LLagostera*
**Domingo M. LLagostera**
(*Attorney-in-charge*)
State Bar No. 24070157
DLLagostera@BlankRome.com
Telephone: (713) 632-8682
Facsimile: (713) 228-6605
**Russell T. Wong**
State Bar No. 21884235
RWong@BlankRome.com
Telephone: (713) 632-8634
Facsimile: (713) 228-6605
**Munira Jesani** *(pro hac vice)*
State Bar No. 24101967
MJesani@BlankRome.com
Telephone: (713) 632-8628
Facsimile: (713) 228-6605
717 Texas Avenue, Suite 1400
Houston, TX 77002
Tel.: (713) 632-8682
**Andrew K. Fletcher** *(pro hac vice)*
PA State ID. 75544
AFletcher@BlankRome.com
501 Grant Street, Suite 850
Pittsburgh, PA 15219
AFletcher@BlankRome.com
Telephone: (412) 932-2736

**Attorneys for Plaintiff / Counter-Defendant NCS Multistage Inc.**

### CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record were electronically served with a copy of the foregoing on August 21, 2020 via the Court's CM/ECF system.

*/s/ Domingo M. LLagostera*
Domingo M. LLagostera