IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| NCS MULTISTAGE INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>NINE ENERGY SERVICE, INC.,<br><br>  Defendant. | CIVIL ACTION NO. 6:20-CV-00277-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT NINE ENERGY SERVICE, INC.'S REPLY BRIEF IN FURTHER
SUPPORT OF NINE'S MOTION TO TRANSFER VENUE**

*Defendant Nine Energy Service, Inc.'s Reply in Support of Nine's Motion to Transfer Venue*

**I.        PRELIMINARY STATEMENT**

The Houston division of SDTX is clearly more convenient for this dispute between Houstonians. NCS Multistage Inc.'s ("NCS") opposition brief has failed to point to a single witness, document, or thing relevant to this case within 100 miles of the Waco courthouse, or within the Waco division. Further, NCS attempts to deny the undisputable fact that it is headquartered in Houston. NCS's arguments regarding consolidation are also flawed, as such a consolidation with recently-filed complaints would substantially delay the resolution of this case. Finally, NCS identifies no reason why jurors in the Waco division should be burdened with deciding issues that do not concern them. In sum, Nine Energy Services, Inc. ("Nine") respectfully submits that NCS's arguments do nothing to undercut Nine's clear demonstration that this case should be transferred to the Houston division of SDTX.

**I.        ARGUMENT**

This is a dispute between Houstonians. NCS's protestations to the contrary should be rejected. Despite what NCS has argued in its opposition brief, NCS has admitted that its "worldwide headquarters" are in Houston. Dkt. 18, at ¶ 2. NCS has further alleged *seven times* in *signed pleadings* that its "worldwide headquarters" are in Houston. Ex. B, at ¶ 8. NCS further admits that its corporate executives are shared with Houston-based NCS Multistage, LLC. Dkt. 28, at 7 n.6. It is therefore beyond reasonable dispute that NCS's principal place of business, or "worldwide headquarters," is in Houston. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010).

**A.        The Vast Majority of Discoverable Evidence is Available in Houston, Weighing In Favor of Transfer.**

Under the first *Volkswagen* factor, the relevant analysis is the *relative* ease of access to *documents and physical evidence* as between the transferor and transferee venues. *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019) (citing

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("*Volkswagen II*")); *cf.* Dkt. 28, at 7.  Factor 1 does not consider the availability of witnesses as NCS argues, rather, those are considered under factors 2 and 3.  *See Volkswagen II*, 545 F.3d at 316.  Since *Volkswagen II*, no appellate court applying Fifth Circuit law has *ever* considered the location of witnesses under Factor 1.  *See, e.g.*, *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).  This Court should therefore reject NCS's attempt to shoehorn inapposite considerations into the Factor 1 analysis.

In view of this, Factor 1 weighs heavily in favor of transfer.  All of Nine's discoverable documents are accessible by Nine's IT staff from Nine's offices in Houston, who will coordinate any document productions.  Ex. A, at ¶ 8.  In contrast, NCS has failed to identify a single discoverable document located in the Waco division.  NCS instead assumes that "key documents" including "sales documents, operation documents, [and] technical documents" are in Midland.  Dkt. 28, at 8.  NCS provides *no evidence* for this assertion, and thus it should be rejected.  As the vast majority of Nine's discoverable evidence is in Houston, and NCS has failed to identify any substantial documents or evidence *anywhere* in WDTX, this factor weighs strongly in favor of transfer.  Dkt. 24, at 5-6.  Nonetheless, even if witnesses are considered, Houston is still the more convenient venue, as discussed in the following sections.

### B.     Both Parties Have Identified Nonparty Witnesses in Houston, Weighing in favor of Transfer.

NCS has failed to identify *any* relevant nonparties within the absolute subpoena power of the Waco division.  Instead, NCS has now expressly identified *an entire category* of non-parties that it *intends* to subpoena – Nine's customers.  *See* Dkt. 28, at 4.  Many of these customers are within the absolute subpoena power of the Houston division, and Nine does not anticipate that any will produce witnesses absent a court order.  Ex. A, at ¶ 11.  NCS has not identified *any* customers in WDTX.  Further, Nine expects to take discovery from Mr. Harris, who is the sole inventor

employed by another defendant to NCS's patent claims.[1]  Nine expects that a subpoena will be necessary to secure his attendance.[2]  As both parties have now identified non-party witnesses subject to the subpoena power of the Houston division, and *none* subject to that same power of the Waco division, this factor strongly weighs in favor of transfer.

### C. The Convenience of Willing Witnesses Weighs in Favor of Transfer.

The convenience of willing witnesses clearly favors transfer to Houston.  As a preliminary matter, the convenience of party witnesses is a *core consideration* under the section 1404 analysis. *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. May 22, 2009); 28 U.S.C. § 1404(a) ("For the convenience of **parties**") (emphasis added).  This factor is relevant even if some witnesses must travel internationally.  *See id.* at 1344-45 (rejecting arguments that all witnesses must be in the transferee district to favor transfer).[3]

NCS has identified *no* witnesses in the Waco division, and instead relies only on its CEO, Mr. Nipper, who resides in the Austin division, and unidentified witnesses of Nine in Midland. *See* Dkt. 28, at 9-10.  Nine has established that it has *no* senior engineering or technical employees in WDTX, and thus does not anticipate that *any* of its Midland employees will be relevant witnesses here.  Ex. A, at ¶ 9.  Even if NCS insists that such witnesses be deposed, Nine will produce its employees for deposition at its corporate headquarters in Houston.  *Id.* at ¶ 10.

In contrast, Houston is more convenient for Mr. McLean, who lives in Houston, and Ms.

---

[1] *NCS Multistage, Inc. v. Packers Plus Energy Servs. Inc.*, No. 6:20-cv-00700-ADA (W.D. Tex. July 30, 2020).

[2] Mr. Harris is subject to the absolute subpoena power of the Houston division of SDTX *at least* because his place of employment is located within 25 miles of SDTX. Ex. B, at ¶ 9.  *See* Fed. R. Civ. P. 45(c)(A).

[3] Waco is not a convenient midpoint. Distance traveled is only a presumptive measure of the time and costs of travel. *Volkswagen II*, 545 F.3d at 317.  But here, air travel to Houston is substantially less expensive in both time and money than to Waco. Ex. B, at ¶ 11.

Sloma, who lives in SDTX and closer to Houston, both of whom are likely to testify on sales and related financial matters. Ex. A., at ¶ 9. Houston is also more convenient for Viggo Brandsdal, who will testify on technical issues, and lives in Norway. Dkt. 24-1, Ex. A, at ¶¶ 21-22.[4]

On balance, NCS has identified one witness in WDTX, who resides outside this division, and whose preferences NCS insists should be treated with "skepticism." Dkt. 28, at 9 n.7. Yet Houston would be more convenient for *all* of Nine's expected witnesses, including any in Midland, and any remaining witnesses identified by NCS have expressed *no preference* between venues. Houston is therefore by far the more convenient venue for the witnesses.

**D.     Consolidation of Other NCS Cases Weigh In Favor of Transfer Under Factors 4 and 5.**

If the Court consolidates the other cases filed by NCS, such consolidation does not weigh against transfer because it would significantly delay resolution of this case. NCS has *not even served* all of its complaints. Ex. B, at ¶ 12. Even if served today, a consolidated proceeding would not come to trial until May 24, 2022. *Id.* at ¶ 13. In contrast, under the SDTX proposed scheduling order, this case could be tried more than five months earlier - by January 14, 2022. *Id.* at ¶ 14. Thus, any consolidation would substantially delay resolution of this case.

Further, *none* of the complaints in the other five pending cases allege *any* connection to the Waco division. For this reason, motions to dismiss or transfer for venue issues are more likely. For example, both TCO Products, Inc. and Arsenal, Inc. have now filed motions to dismiss for *improper* venue, identifying Houston as the appropriate venue. *NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 21, at 4, Dkt. 22, at 5 (W.D. Tex. Sept. 3, 2020).

Indeed, NCS has alleged that the principal place of business for all but four defendants is

---

[4] Even if witnesses are called from Midland, Houston is still more convenient. *See supra* note 3.

in the Houston division. Ex. B, at ¶ 15. None are in the Waco division. *Id.* To the extent these cases are consolidated anywhere, they should be consolidated in Houston. In short, motions to dismiss or transfer are likely as *no* defendants are located in the Waco division (two of which have already been filed), and any consolidation would substantially delay resolution of this case. Therefore factors 4 and 5 are neutral or weigh slightly in favor of transfer.

### E. The Local Interests of the Houston Division of SDTX are substantially greater than those in the Waco Division of WDTX Under Factor 6.

The local interests of the Houston division substantially outweigh any alleged interest of the Waco division. The Supreme Court has expressly held that local interests are tied to the burdens of jury service. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-10 (1947). In applying that standard, the Fifth Circuit considers the local interests of divisions, even among separate districts. *Volkswagen II*, 545 F.3d at 317-18 (comparing interests of the Dallas division of NDTX and the Marshall division of EDTX).[5]

It is undisputed that any venire panel in this case would be drawn *solely* from jurors in the Waco division, which NCS has failed to show have *any* interest in this case at all. Indeed, Nine has not delivered a single accused product in the Waco division. Ex. A, at ¶ 12. In contrast, *both* parties are located in, and have employees and operations in the Houston division. Therefore, the jurors in Houston have a clear and direct local interest in this case. *See* Dkt. 24, at 8-9.

## II. CONCLUSION

Factors 1-4, and 6 weigh heavily in favor of transfer, and factors 5, 7 and 8 are neutral. Accordingly, Nine respectfully requests that this case be transferred to the Houston division.

---

[5] The Fifth Circuit has also never recognized a difference in analysis under Section 1404 between divisions or districts. *In re Radmax*, 720 F.3d at 288; *Cf. Cameron Int'l Corp. v. Nitro Fluids L.L.C.*, No. 6:20-cv-00125-ADA, 2020 WL 3259809, at *10 (W.D. Tex. June 16, 2020)

Dated: September 4, 2020

Respectfully submitted,

VINSON & ELKINS LLP

By: */s/ Hilary L. Preston*

Hilary L. Preston
Texas Bar No. 24062946
hpreston@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, TX 78746
Telephone: +1.512.542.8400
Fax: +1.512.542.8612

Parker D. Hancock
Texas Bar No. 24108256
phancock@velaw.com
Sean P. Belding
Texas Bar No. 24109634
sbelding@velaw.com
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002-6760
Telephone: +1.713.758.2222
Fax: +1.713.758.2346

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2020, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system per Local Rule CV-5(b)(1).

*/s/ Hilary L. Preston*
Hilary L. Preston