**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| NCS MULTISTAGE INC., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:20-cv-00277-ADA |
| | § | |
| vs. | § | |
| | § | |
| NINE ENERGY SERVICE, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF NCS'S REPLY IN SUPPORT OF MOTION TO STRIKE DEFENDANT**
**NINE ENERGY SERVICE INC.'S PRELIMINARY INVALIDITY CONTENTIONS**

Nine knows that the purpose of preliminary invalidity contentions is to provide notice of a party's invalidity theories before the case enters the claim construction phase. But Nine insists that its prior art dump of over 50 references, which can be combined in thousands of ways to form the basis of Nine's invalidity theories, satisfies this notice function. NCS has no idea which of Nine's references are being cited for anticipation, or which are being cited or combined for obviousness. This Court has made it clear that it wants cases to proceed efficiently; Nine's prior art dump and lack of cooperation are designed to do the exact opposite.

Nine's first argument is a technical one: that it has complied with the literal words of the Court's Order. Dkt. 34 at 1-2. But as previously explained, NCS does not believe a chart with thousands of possible prior art combinations and no other information is what the Court intended in its Order. Dkt. 31 at 2. We thought the days of hiding the ball in invalidity contentions were over in Texas, but Nine must believe they are not. Their chart is not within the spirit of the notice function of invalidity contentions.[1]

---

[1] Nine says that NCS offered to provide Nine "any authority it could find to support its position prior to filing any motion to strike," but then filed its motion without providing such authority.

Nine's second argument is that Judge Albright crafted his procedures to ensure a patent proceeding "that was the most fair and neutral to every kind of lawyer" and to ensure that counsel would "pretty much know within certain parameters exactly how the case would go."  Dkt. 34 at 2.  We do not believe Judge Albright had Nine's invalidity charts in mind when he made those statements.  In fact, we believe just the opposite.  An Order permitting a prior art dump, without any additional information, is certainly not fair or neutral to NCS: Nine has been on notice of NCS's specific infringement positions since July 10, 2020, yet NCS is headed into the *Markman* with no notice of Nine's invalidity positions.  Dkt. 25 at 1.  NCS cannot know "exactly how the case [will] go" without understanding Nine's basic invalidity positions, such as which references Nine alleges are anticipating, and which references Nine intends to use or combine to argue obviousness.  Nine's refusal to produce proper invalidity contentions undercuts the predictability the Court desires.

Nine's third argument is that "*other courts*," such as the EDTX, require invalidity contentions to serve a notice function, making the notice function requirement "not applicable here."  Dkt. 34 at 3 (emphasis in original).  Nine's position raises the question – what is the purpose of providing invalidity contentions if they do not provide notice?  And Nine ignores that the notice purpose has been stated by the Federal Circuit.  *See Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) ("The purpose of this rule, *and the local patent rules in general*, is to require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction." (quoting *O2 Micro Int'l Ltd. v.*

---

Dkt. 34 at 2.   That is a mischaracterization.  NCS said that if it located an opinion authored by Judge Albright clarifying his procedures, NCS would notify Nine of such opinion, else it would proceed with the motion to strike.  NCS did not find such an opinion, so it filed the present Motion.

*Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006)) (emphasis added) (internal quotations omitted); Dkt. 31 at 1.  And Judge Albright, *citing the EDTX*, has recognized that "the purpose of invalidity contentions is to *provide notic*e while discovery is intended to develop details so that legal theories become more concrete as the litigation progresses."  *Pisony v. Commando Constrs., Inc.*, No. 6:17-cv-55, 2020 U.S. Dist. LEXIS, 153007, at \*4-5 (W.D. Tex. Aug. 24, 2020) (quoting *Realtime Data, LLC v. T-Mobile, U.S.A., Inc.*, No. 6;10-cv-493, 2013 WL 12149180, at \*3 (E.D. Tex. Feb. 8, 2013) (emphasis added) (internal quotations omitted).  Nine argues that *Pisony* should be disregarded because it "refers to a Scheduling Order issued by Judge Pitman which expressly required the parties to identify all asserted bases for invalidity," and that this Court has no similar requirement.[2]  Dkt. 34 at 3 (internal citations and quotations omitted).  But in recognizing the notice function of invalidity contentions, this Court made no mention of or reference to Judge Pitman's Scheduling Order.  *See generally Pisony*, 2020 U.S. Dist. LEXIS, at \*4-5.

Fourth, Nine argues that its prior art chart provides "sufficient notice of Nine's invalidity contentions for the purposes of the *Markman* process without imposing unnecessary burden on either party."  Dkt. 34 at 4.  Nine cannot be serious.  Nine cites over 50 references, does not say which are anticipatory if any, and does not say which should be combined for obviousness.  That is not notice.  Nine also argues that NCS must wait until after *Markman* to obtain Nine's specific grounds of invalidity.  *Id.*  If that is correct, why require invalidity contentions before Markman?  It cannot be this Court's intention that NCS enter *Markman* with such a limited understanding of Nine's invalidity positions.  Finally, Nine argues that NCS has the benefit of previewing Nine's

---

[2] The docket sheet for *Pisony* shows that the case was initially assigned to Judge Pittman, who issued the scheduling order, but was later transferred to Judge Albright.

invalidity positions in Nine's IPR Petition.  That makes no sense.  Nine's Petition only discloses four prior art references, while Nine's invalidity contentions disclose over 50 references.  *See generally* Dkt. 31-1.  The IPR proceeding and this litigation are different forums, with different rules.  If Nine wanted to rely on its IPR positions, it could have repeated them here.  The fact that they did not is telling.

Fifth, Nine argues that NCS cannot object to the length of Nine's prior art chart.  Dkt. 34 at 4.  But NCS does not object to the length of the chart or the number of references it contains.  NCS objects to Nine's failure to explain which references are anticipating or obvious, or to identify any combination of references.  Dkt. 31 at 2.  The undue burden placed on NCS does not come from the length of the contentions or the number of references, but from these deficiencies.

Nine's final argument is that NCS's motion to compel is a waste of the Court's and NCS's time, because NCS's proposed order simply requires Nine to re-serve the same contentions it has already served.  Obviously Nine knows that NCS has not motioned this Court to ask Nine to serve the same deficient invalidity contentions, but rather it has moved to strike the current preliminary invalidity contentions for facially lacking notice and asks this Court order Nine to serve contentions that actually provide notice.

Nine is hiding the ball, presumably to drive up NCS's costs and pressure NCS to transfer this case to the SDTX.  Indeed, on more than one occasion Nine's counsel stated NCS could moot its concerns about the lack of notice in the invalidity contentions by agreeing to have this case transferred to the SDTX where the local patent rules are supposedly more stringent.  The Court should not allow Nine to skirt the notice function of invalidity contentions like this.

For all the foregoing additional reasons, NCS's Motion should be granted and Nine's preliminary invalidity contentions should be stricken.

4

Dated:  September 30, 2020

Respectfully submitted,

BLANK ROME LLP

*/s/ Domingo M. LLagostera*
**Domingo M. LLagostera**
(*Attorney-in-charge*)
State Bar No. 24070157
Tel.: (713) 632-8682
Fax: (713) 228-6605
DLLagostera@BlankRome.com
**Russell T. Wong**
State Bar No. 21884235
RWong@BlankRome.com
Tel.: (713) 632-8634
Fax: (713) 228-6605
**Munira Jesani** (*admitted pro hac vice*)
State Bar No. 24101967
MJesani@Blankrome.com
Tel.: (713) 632-8682
Fax: (713) 228-6605
717 Texas Avenue, Suite 1400
Houston, TX 77002

**Andrew K. Fletcher** (*admitted pro hac vice*)
PA State ID. 75544
AFletcher@BlankRome.com
Tel.: (412) 932-2736
501 Grant Street, Suite 850
Pittsburgh, PA 15219

**ATTORNEYS FOR PLAINTIFF NCS
MULTISTAGE INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record were electronically served with a

copy of the foregoing on September 30, 2020 via the Court's CM/ECF system.

*/s/ Domingo M. LLagostera*
Domingo M. LLagostera

5