**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| NCS MULTISTAGE INC., | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 6:20-cv-00277 ADA |
| vs. | § § § | |
| NINE ENERGY SERVICE, INC., | § § | |
| Defendant. | § | |

**NCS MULTISTAGE INC.'S OPPOSED MOTION TO STRIKE
SUPPLEMENTAL DECLARATION OF DR. NATHAN MEEHAN (DKT. 46-1)**

Plaintiff NCS Multistage Inc. ("NCS") moves to strike the Supplemental Declaration of Dr. Nathan Meehan (Dkt. 46-1) (the "Supplemental Declaration") for two reasons. First, the Supplemental Declaration contains an untimely disclosure of new expert opinion and extrinsic evidence that violates this Court's patent rules. Second, the Supplemental Declaration is an attempt to make additional arguments that should have been made in Dr. Meehan's first declaration (Dkt. 42-1) ("First Declaration") because the relevant issues were known to Dr. Meehan when he submitted the First Declaration. Dr. Meehan's deposition showed his First Declaration contained deficiencies, so the Supplemental Declaration is an effort to address those deficiencies. Therefore, the Supplemental Declaration should be stricken.

**I.      Background**

The Court's schedule unambiguously ordered each party to disclose and produce the extrinsic evidence it would rely on for claim construction, including a summary of expert witness opinions, by October 16, 2020. *Id.* The Court advised the parties that "[a] failure to summarize the potential expert testimony in a good faith, informative fashion may result in the exclusion of

the proffered testimony."

On October 16, 2020, both parties produced a summary of expert testimony and items of extrinsic evidence they would rely on for claim construction.

On October 30, 2020, both parties filed their opening claim construction briefs, each of which was supported by the parties' respective expert's declaration. After the opening briefs and supporting expert declarations were filed, the parties conducted expert depositions. NCS's counsel deposed Dr. Meehan on his expert opinions and declaration on November 10, 2020.

On November 20, 2020, over a month after the Court's disclosure deadline and ten days after Dr. Meehan's deposition, Nine filed the Supplemental Declaration in support of its responsive claim construction brief. Dkt. 46-1. The Supplemental Declaration includes fifty new items of extrinsic evidence cited in support of Dr. Meehan's opinion on the term "internal diameter" that Nine did not identify or disclose on October 16, 2020.[1] *See* Dkt. 46-1 at ¶¶ 16-19; *Id.* at pp. 21-24. In a meet and confer, Nine's counsel did not deny that these fifty references were not identified or produced on October 16, but rather argued that the references are properly included in the Supplemental Declaration as rebuttal evidence.

The remainder of the Supplemental Declaration is couched as a rebuttal, but really is an attempt to bolster Dr. Meehan's opinions to counter admissions he made in his deposition testimony.[2]

---

[1] In fact, Nine did not produce the extrinsic references to NCS until November 30, 2020.

[2] In a meet and confer, Nine's counsel offered Dr. Meehan for a one-hour deposition on his supplemental declaration. But NCS should not have to incur the time and expense of a second deposition when Nine has violated this Court's order. The schedule is intended to allow the parties to efficiently conduct expert discovery.

**II.     Argument**

1. <u>Dr. Meehan's new opinions on "internal diameter" should be stricken</u>.

The Federal Circuit recognizes that local patent rules are "designed specifically to 'require the parties to crystallize their theories of the case early in the litigation' so as to 'prevent the 'shifting sands' approach to claim construction.'" *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987 FMS, 1998 U.S. Dist. LEXIS 17564, at *7 (N.D. Cal. 1988). Based on this rationale, other courts in this Circuit have stricken extrinsic evidence under similar circumstances as here. For example, the Southern District of Texas has a nearly identical requirement regarding disclosure of extrinsic evidence in its Local Patent Rules:

> At the same time the parties exchange their respective "Preliminary Claim Constructions," *they must also exchange a preliminary identification of extrinsic evidence they contend supports their respective claim constructions*, such as dictionary definitions, citations to learned treatises and prior art, and testimony of fact and expert witnesses. *The parties must identify each item of extrinsic evidence by production number or produce a copy of any such item not previously produced*.

*See* Exhibit A, Southern District of Texas P.R. 4-2(b) (emphasis added). In *Goodman v. Smart Modular Technologies, Inc.*, the plaintiff disclosed one item of extrinsic evidence two months after the deadline in P.R. 4-2(b). 2015 WL 12777374, at *2-3 (S.D. Tex. June 4, 2015). In striking the evidence, and all references to it, the court noted that "[b]oth the letter and spirit of the Patent Rules require early and complete disclosure of extrinsic evidence relevant to claim construction" and that "[t]he spirit of the Patent Rules ***do not permit a party to wait until after its P.R. 4-2 and 4.3 disclosures to look for new information to support its claim construction position***." *Id.* at *3 (emphasis added). Similarly, in *Fairchild Industries, Inc. v. Wireless Seismic, Inc.*, the plaintiff moved to strike several paragraphs in an expert declaration that related to claim construction issues because neither the expert nor the expert's testimony were disclosed

3

in accordance with the patent rules. No. 4:14-cv-2972, 2015 U.S. Dist. LEXIS 28870, *4-5 (S.D. Tex. March 10, 2015). Citing the same requirement of the local patent rules, the court struck the testimony from the record. *Id.* ("Further, Eastern District P.R. 4-3 states that, no later than 60 days after service of the Invalidity Contentions, the parties must file a Joint Claim Construction and Prehearing Statement that contains 'an identification of extrinsic evidence known to the party on which it intends to rely . . . [such as] fact and expert witnesses.' (E.D. Tex. P.R. 4-3.) The Southern District of Texas has nearly identical provisions in its patent rules. (P.R. 4-2, 4-3.)").

Because the Supplemental Declaration includes new opinion on the term "internal diameter" that relies on 50 previously undisclosed references, this part of the opinion should be stricken. The issues regarding the term "internal diameter" were known when Dr. Meehan submitted his first declaration. The summary of NCS's expert, John Rodgers, specifically described the issue. Exhibit B at 15-16. Dr. Meehan should not now be allowed to supplement his declaration because his original one was lacking.

2. <u>The remainder of the Supplemental Declaration should be stricken as improper</u>.

During his deposition, Dr. Meehan made material statements that were inconsistent with his First Declaration. The Supplemental Declaration, largely couched as a rebuttal to Dr. Rodgers's testimony, is an attempt to address those inconsistent statements. For example:

| **First Declaration** | **Deposition Testimony** | **Supplemental Declaration** |
|---|---|---|
| **Dr. Meehan argues that "internal diameter" refers to the measured diameter of the inner walls of a channel:**<br><br>"Thus, it is my opinion that a POSA would understand | **The relevant claims recite a "casing stream having an internal diameter that defines a fluid passageway." Dr. Meehan admits that the "internal diameter" cannot itself define a fluid passageway:** | **Dr. Meehan argues that nothing about the claim language suggests internal diameter refers to anything more than the measured diameter of the pipe.** |

4

| **First Declaration** | **Deposition Testimony** | **Supplemental Declaration** |
|---|---|---|
| 'internal diameter' to mean "the diameter of a fluid channel measured perpendicularly from the inner wall of the fluid channel through the center of the casing string, to the opposite inner wall." <br><br> Dkt. 42-1, ¶ 65. | Q.  Do you see in there, you highlighted or you bolded and underlined: "The casing string having an internal diameter." Do you see that? <br><br> A.  Yes. <br><br> Q.  And then it goes to say: "The casing stream having an internal diameter that *defines a fluid passageway*." What does that mean to you? <br><br> … <br><br> Q.  An internal diameter which is a scaler property doesn't in and of itself define a passageway, does it? <br><br> A.  *The internal diameter is one characteristic of a fluid passageway. So, no, it does not by itself define the entire fluid passageway.* (emphasis added) <br><br> Dkt. 45-2 at 37:15-21, 38:24-39:4. | "While it may be possible that a POSA at some time has carelessly referred to a 'sidewall' of a pipe as its inside diameter or internal diameter (the 'Sidewall Definition'), that is not an accepted or well-known industry definition in the petroleum industry, or any other industry of which I am aware. <br><br> … <br><br> In my opinion, *nothing about the phrase 'the casing string having an internal diameter that defines a fluid passageway,' as used in the preamble of the independent claims of the '445 Patent, suggests that the term 'internal diameter' is being used under the Sidewall Definition of 'internal diameter.'"* Instead, it is well-known that the size of a fluid passageway through a length of casing is measured in terms of internal diameter, such as illustrated in the. When used in such a context, the term "internal diameter" indisputably refers to the diameter of the pipe or the Diameter Definition, and not to a sidewall. <br><br> Dkt. 46-1 at ¶¶ 12, 19. |

5

| **First Declaration** | **Deposition Testimony** | **Supplemental Declaration** |
|---|---|---|
| **Dr. Meehan argues that "disengagement" requires breaking of a fluid-tight seal:**<br><br>"The ordinary meaning of 'disengage' is to release from attachment or connection. Thus, based on a POSA's understanding of the term "sealing engagement," it is my opinion that a POSA would have understood this term to mean the release of the rupture disc from being attached or connected to create a fluid-tight seal."<br><br>Dkt. 42-1 ¶ 110. | **Dr. Meehan admits that (1) the rupture disc disengages when it moves; and (2) the disc ruptures at some point after disengagement:**<br><br>Q. (By Mr. Wong) In Claim 28 when it says disengaged from sealing [sic] engagement, is it your understanding that when it disengages, the – when the disk disengages, it fails?<br><br>A. ***When it disengages, it accelerates downwards and then fails***. ***The disengagement itself instantaneously doesn't cause a failure***, but it leads to it as described in the specification.<br><br>Dkt. 45-2 at 70:23-71:5 (emphasis added). | **Dr. Meehan argues that (1) when the rupture disc moves before rupturing, it is not disengaged; and (2) the disc is not disengaged until it ruptures:**<br><br>Merely moving the rupture disc before it ruptures is insufficient to "disengage the rupture disc from sealing engagement." The claim is clear that the disc must ***disengage*** ("to release from attachment or connection," *see* Ex. 5, at 353) from sealing engagement. The seal can be maintained even when the rupture disc moves.<br><br>Dkt. 46-1 at ¶ 41 (emphasis in original). |

*See* Exhibit C.[3] Additionally, Dr. Meehan makes various arguments in the Supplemental Declaration that simply reinforce his First Declaration arguments with no other basis for supplementation. *See, e.g.*, Dkt. 46-1 at ¶ 31.

    It is improper for Dr. Meehan to supplement his opinions to correct the inconsistencies in his deposition testimony, or to bolster his First Declaration. The Supplemental Declaration does not address any positions that were not already know at the time of the First Declaration. Nine had a summary of Dr. Rodgers's opinions and NCS's extrinsic evidence on October 16, 2020. Both parties knew the other's claim construction positions and substance of expert opinions by

---

[3] Exhibit C contains the full testimony from the above table, for context.

that date, because that is what the rules required. Dr. Meehan should not now be allowed to supplement his opinions because his First Declaration was deficient or because he gave testimony inconsistent with that First Declaration.

For all the foregoing reasons, Dr. Meehan's Supplemental Declaration should be stricken from the record.

Dated: December 7, 2020                               Respectfully submitted,

*/s/ Domingo M. LLagostera*
**Domingo M. LLagostera**
(*Attorney-in-charge*)
State Bar No. 24070157
Tel.: (713) 632-8682
Fax: (713) 228-6605
DLLagostera@BlankRome.com
**Russell T. Wong**
State Bar No. 21884235
RWong@BlankRome.com
Tel.: (713) 632-8634
Fax: (713) 228-6605
**Munira Jesani** (*admitted pro hac vice*)
State Bar No. 24101967
MJesani@BlankRome.com
717 Texas Avenue, Suite 1400
Houston, TX 77002
Tel: (713) 632.8628

**Andrew K. Fletcher** (*admitted pro hac vice*)
PA State ID. 75544
AFletcher@BlankRome.com
501 Grant Street, Suite 850
Pittsburgh, PA 15219
Tel: (412) 932.2736

**ATTORNEYS FOR PLAINTIFF NCS MULTISTAGE INC.**

7

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for NCS and counsel for Nine held a telephonic meet and confer on this motion on December 3, 2020. Counsel for Nine indicated Nine opposes this motion.

*/s/ Munira Jesani*
Munira Jesani

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record were electronically served with a copy of the foregoing on December 7, 2020 via the Court's ECF system.

*/s/ Domingo M. LLagostera*
Domingo M. LLagostera