**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| NCS MULTISTAGE INC., <br><br> Plaintiff, <br><br> v. <br><br> NINE ENERGY SERVICE, INC., <br><br> Defendant. | CIVIL ACTION NO. 6:20-CV-00277-ADA <br><br> **JURY TRIAL DEMANDED** |

**NINE ENERGY SERVICE, INC.'S AMENDED OPPOSITION TO NCS MULTISTAGE INC.'S MOTION TO STRIKE NINE'S SUPPLEMENTAL EXPERT REPORT[1]**

Nine Energy Service, Inc. ("Nine") respectfully submits this Opposition to Plaintiff NCS Multistage Inc.'s ("NCS's") Motion to Strike Nine's Supplemental Expert Report, (Dkt. 47) (the "Motion") and requests that the Court deny the Motion. NCS cannot point to any rule of this Court or any principle of fairness that would deny Nine the right to respond to and rebut opinion and extrinsic evidence presented by NCS. Indeed, NCS expressly reserved for itself the right it now insists that Nine does not have. Ex. 1 ("Disclosure of Extrinsic Evidence"), at 1-2.[2] At root, NCS does not like the substance of Nine's rebuttal, and has therefore attempted to fabricate baseless procedural reasons to exclude it. NCS's motion should be denied.

**I.      Background**

On October 16, 2020, NCS served a Disclosure of Extrinsic Evidence that purported to provide notice to Nine of the opinions to be presented by NCS's expert, Dr. Rodgers. Exs. 1, 3. On the term "internal diameter," NCS indicated that "Dr. Rodgers will opine that NCS's proposed claim construction is supported by" a list of eight references. Ex. 3, at 15-16. The summary

---

[1] This opposition has been re-filed with a proposed order denying NCS's Motion (Dkt. 47).
[2] Nine also reserved the right to supplement its disclosures. Ex. 2, at 1-2.

provided no indication about *what* Dr. Rodgers would say about those references, or how they supported NCS's non-construction of "internal diameter." *Id.* The summary further provided that Dr. Rodgers would opine that there were "two common definitions widely used in the oil industry." *Id.* at 16. On the term "sealing engagement," the summary suggested that Dr. Rodgers would opine that "in order to maintain a seal, the position of the barrier, i.e. rupture disc, must be held fixed relative to the casing." *Id.* at 11.

On October 30, 2020, NCS filed its Opening Claim Construction Brief. Dkt. 41 ("NCS Br."). Contrary to the summary served on October 16, NCS now argues that there is a plain and ordinary meaning of "internal diameter," (the "Diameter Definition") and *only one* industry-specific meaning of "internal diameter" (the "Sidewall Definition").[3] NCS Br., at 4-5. Further, NCS's expert now argues that *all* the references cited by Dr. Rodgers support the industry specific meaning, *even though this meaning is not present in their proposed construction.* NCS Br., Ex. A ("Rodgers Dec."), at ¶42. On the term "sealing engagement," Dr. Rodgers provided opinion contrary to NCS's summary, explaining that an example of objects in "sealing engagement" is a "piston in a seal bore," and that such a seal could be maintained on a component that moves within a "limited range of travel." *Id.* at ¶¶37, 39.

On November 11, 2020, NCS deposed Dr. Meehan and suggested – for the first time – that the presence of the phrase "casing string having an internal diameter that defines a fluid passageway" suggests that the term "internal diameter" should be interpreted according to its Sidewall Definition in the claims of U.S. Patent No. 10,465,445 (the "'445 Patent"). Ex. 4 (Meehan Dep.), at 37:11-39:4. Dr. Meehan did not agree with this conclusion, and merely

---

[3] The terms "Diameter Definition" and "Sidewall Definition" carry the same meaning as defined in Nine's Responsive Claim Construction Brief Dkt. 46, at 2.

accurately testified that an internal diameter – by itself – does not fully define the geometry of a fluid passageway in a casing string. *Id.*

On November 20, 2020, Nine filed its Responsive Claim Construction Brief, and included a Supplemental Declaration of Dr. Nathan Meehan (Dkt. 46-1) ("Supplemental Report"), responding to points raised in NCS's Opening Claim Construction Brief, Dr. Rodgers' declaration in support of that brief, and to points raised by counsel for NCS at his deposition on November 11, 2020. Dr. Meehan rebutted the positions of NCS regarding the term "internal diameter," including responding to the positions actually taken by NCS in its Opening Claim Construction Brief. Dkt. 46-1, at ¶¶11-20. Dr. Meehan further clarified that his testimony regarding definitions of fluid passageways did not suggest that the claims used the alleged Sidewall Definition of "internal diameter." *Id.* at ¶19.

Further, now that Dr. Meehan was aware that there was only a single alleged industry-specific definition of "internal diameter," Dr. Meehan further conducted a survey of the oil and gas academic literature, ultimately reviewing 50 selected papers to determine whether "internal diameter" has been used under the alleged Sidewall Definition, as proposed by NCS. *Id.* at ¶¶16-18. In all but one reference, Dr. Meehan discovered that the term "internal diameter" exclusively was used according to the Diameter Definition. *Id.* at ¶17. All of the documents reviewed by Dr. Meehan are publicly available, and were listed in his Supplemental Report. *Id.* at Exhibit B. Nine produced copies of these documents on November 30, 2020.

Regarding the term "sealing engagement," Dr. Meehan makes express that he agrees with NCS's expert that sealing engagement can be maintained between two objects in relative motion, such as a piston in a bore. *Id.* at ¶41; *accord* Ex. 5 (Rodgers Dep.), at 84:22-85:2; Rodgers Dec., at ¶37.

**II.     Argument**

   *A.     Nine Is Entitled To Respond to Expert Declarations and Extrinsic Evidence, Particularly In Response to Arguments Not Previously Disclosed.*

NCS attempts to read this Court's Joint Scheduling Order (Dkt. 25) to preclude Nine from responding to argument, opinion, and expert testimony presented by NCS with further expert opinion or extrinsic evidence. But it should not be read as a blanket ban on supplementing such disclosures in response to arguments presented by other parties. Indeed, *both parties* expressly reserved for themselves the right to supplement. Ex. 1, at 1-2; Ex. 2, at 1-2.

Parties in this Court have repeatedly presented supplemental expert testimony and extrinsic evidence for consideration by the Court without issue. *See, e.g.*, *Intellectual Ventures I LLC v. VMware, Inc.*, No. 1:19-cv-01075-ADA, Dkts. 60-1, 60-2 (W.D. Tex. Mar. 27, 2020) (two expert reports submitted with plaintiff's responsive *Markman* brief); *Intellectual Ventures I*, No. 1:19-cv-01075-ADA, Dkt. 64-2 (W.D. Tex. Apr. 10, 2020) (supplemental expert declaration submitted with defendant's reply *Markman* brief) ; *UNM Rainforest Innovations v. Globalfoundries Inc.*, No. 6:20-cv-00243-ADA, Dkt. 40-1 (W.D. Tex. Sep. 25, 2020) (expert declaration submitted with plaintiff's responsive *Markman* brief); *Green Mountain Glass, LLC v. O-I Glass, Inc.*, No. 6:19-cv-600-ADA, Dkt. 58-1 (W.D. Tex. Sep. 17, 2020) (supplemental expert declaration submitted with defendant's reply *Markman* brief). Similarly, Nine's supplementation of its initial disclosure of expert testimony and extrinsic evidence here is unobjectionable.

Nonetheless, NCS attempts to show that Nine should not be permitted to supplement its disclosures by reference to local patent rules *not applicable to this case*. Section II.1 of NCS's motion is a litany of rules that do not apply here, citing Federal Circuit opinions regarding NDCA's local patent rules, and district court opinions interpreting SDTX's local patent rules in view of EDTX's nearly identical local patent rules. Motion, at 3-4. But this case is not in any of those

4

jurisdictions, and as the Court well knows, it has not adopted local patent rules *at all*. Instead, the procedure of this case is governed by the Court's *Order Governing Proceedings* (Dkt. 20). If NCS would like to avail itself of a jurisdiction with local patent rules, Nine again reminds NCS that it is free to withdraw its opposition to Nine's motion to transfer to SDTX.

Further, it cannot be that the Court's Joint Scheduling Order bars Nine from responding to new arguments and opinion *of which Nine had no prior notice.* In the absence of Dr. Meehan's Supplemental Report, Nine would have had *no opportunity* to present opinion and extrinsic evidence to rebut the arguments made in NCS's *Markman* briefing, particularly in view of new positions taken by NCS. Not until NCS's Opening Claim Construction Brief was Nine on notice that NCS would be arguing (1) that "internal diameter" had only one alleged industry-specific meaning, (2) that Dr. Rodgers believed *all* references identified referred to the alleged Sidewall Definition, and (3) that the phrase "internal diameter that defines a fluid passageway" is relevant to the construction of "internal diameter." Thus, denying Nine the right to supplement its expert report would be unfairly prejudicial to Nine.

In contrast, NCS cannot argue any unfairness or prejudice as a result of Dr. Meehan's Supplemental Report. NCS had ample opportunity to address those issues in the *Markman* briefing, including in its Reply In Support of Its Opening Claim Construction Brief (Dkt. 48) ("Reply Brief") filed on December 11, 2020. Nine offered NCS the opportunity to depose Dr. Meehan on his Supplemental Report, *but NCS declined to do so. See* Motion, at 2 n.2. Further, NCS could have submitted its own supplemental expert report in support of its Reply Brief. But NCS refused to avail itself of any of these options.

Instead, NCS has again chosen to waste the Court's time by filing yet another motion to strike. Its confusing comment about why they refused a supplemental deposition of Dr. Meehan

is telling on this point. Motion, at 2 n.2. NCS claims that they should not have to bear the burden of a second deposition, yet instead chooses to impose the burden of this motion to strike *on the Court*. *Id.* Further, NCS wrongly claims that "[t]he schedule is intended to allow the parties to efficiently conduct expert discovery." *Id.* But neither the Order Governing Proceedings (Dkt. 20) or the Joint Scheduling Order (Dkt. 25) provide for expert depositions *at all*. Instead, the parties agreed to them on their own initiative. If NCS would have preferred a different deposition schedule, it was free to propose one when the parties discussed the issue.

Simply put, NCS's motion is nothing more than a baseless attempt by NCS to exclude evidence and testimony that it knows is detrimental to its case. Indeed, as Judge Gilstrap has remarked, "[a] party whose expert's opinions place a subject at issue cannot claim surprise or prejudice when an opposing expert responds to those opinions." *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-00135-JRG, 2019 WL 5373021, at *2 (E.D. Tex. Mar. 19, 2019). Accordingly, NCS's motion should be denied.

> B. Dr. Meehan Is Entitled To Respond to NCS's Arguments Presented At His Deposition.

Without citing any rule or authority, NCS argues that it was improper for Dr. Meehan to "correct the inconsistencies in his deposition testimony, or to bolster his First Declaration." Motion, at 6. But NCS provides *no basis* for this statement, identifying no rule or authority that Dr. Meehan's Supplemental Report supposedly violates. This is a sufficient reason alone to deny NCS's motion.

The problem here is not a violation of any rule. Instead, NCS simply does not like that Dr. Meehan was able to respond to issues raised in his deposition. For example, Dr. Meehan opined in his first declaration that "internal diameter" carries its Diameter Definition. At his deposition, he was asked whether an internal diameter alone defines a fluid passageway, and accurately

responded that, in geometric terms, it did not. Ex. 4, at 38:24-39:4. NCS would like to argue that this somehow means that Dr. Meehan confessed to the use of the Sidewall Definition in the claims of the '445 Patent. This is false. Indeed, for this reason, Dr. Meehan clarified that he agreed with NCS's expert that the fluid passageway through a casing string is adequately defined by an "internal diameter" according to the Diameter Definition. Dkt. 46-1, at ¶19; *accord* Ex. 5, at 62:5-63:15. On the substance, this agreement of the parties' experts is damaging to NCS's attempt to manufacture an alternative Sidewall Definition of "internal diameter" or show its alleged use in the claims of the '445 Patent.

On the term "disengage from sealing engagement," Dr. Meehan's Supplemental Report merely confirmed his agreement with NCS's expert that sealing engagement can be maintained even where parts move relative to one another. Dkt. 46-1, at ¶41; *accord* Ex. 5, at 84:22-85:2, Rodgers Dec., at ¶37. On the substance, this agreement of the parties' experts is *fatal* to NCS's proposed constructions of the term "disengage the rupture disc from sealing engagement," and other terms that include that phrase.

But rather than confront Dr. Meehan on the substance of any issues presented in his Supplemental Report, NCS chose to file this Motion instead.

### III. CONCLUSION

NCS had ample opportunities to probe any alleged weaknesses with Dr. Meehan's Supplemental Report. It could have (1) conducted a supplemental deposition of Dr. Meehan, (2) presented its own supplemental expert report of Dr. Rodgers with its Reply Brief, or (3) presented attorney argument in that Reply Brief rebutting Dr. Meehan's Supplemental Report. But NCS availed itself of *none* of these. Instead, NCS insists on wasting the resources of Nine and this Court to review and respond to its baseless motion. For all the foregoing reasons, Nine respectfully requests that NCS's Motion be denied.

Dated: December 14, 2020

Respectfully submitted,

VINSON & ELKINS LLP

By: */s/ Hilary L. Preston*

Hilary L. Preston
Texas Bar No. 24062946
hpreston@velaw.com
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, TX 78746
Telephone: +1.512.542.8400
Fax: +1.512.542.8612

Parker D. Hancock
Texas Bar No. 24108256
phancock@velaw.com
Sean P. Belding
Texas Bar No. 24109634
sbelding@velaw.com
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Telephone: +1.713.758.2222
Fax: +1.713.758.2346

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of December, 2020, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system per Local Rule CV-5(b)(1).

*/s/ Hilary L. Preston*
Hilary L. Preston