# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| NCS MULTISTAGE INC., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:20-cv-00277 ADA |
| | § | |
| vs. | § | |
| | § | |
| NINE ENERGY SERVICE, INC., | § | |
| | § | |
| Defendant. | § | |

**NCS MULTISTAGE INC.'S REPLY IN SUPPORT OF OPPOSED MOTION TO STRIKE SUPPLEMENTAL DECLARATION OF DR. NATHAN MEEHAN (DKT. 46-1)**

**A. Nine had specific notice of Dr. Rodgers's opinions on "internal diameter".**

Nine does not deny that this Court unambiguously ordered each party to disclose and produce the extrinsic evidence it would rely on for claim construction, including a summary of expert witness opinions, by October 16. Dkt. 25, p. 2. Nine does not deny that it submitted a supplemental declaration citing to **50 new references** on November 20. Nine does not deny that it did not produce the 50 new references until November 30. Nine's defense for why it's expert should nevertheless be permitted to disclose and opine on 50 new references is that NCS purportedly presented "new arguments and opinions *of which Nine had no prior notice*." Dkt. 51, p. 5. This is smoke to cover Nine's attempt to clean up Dr. Meehan's deposition admissions through a second and untimely declaration. As explained below, Nine never made any new arguments:

    1. NCS has consistently argued "internal diameter" has **two** industry meanings.

Nine says NCS changed its position in its summary disclosure that "internal diameter" has two industry meanings by arguing on page 4 of its Opening Brief that "internal diameter" has "*only one* industry-specific meaning." Dkt. 51, p. 2 (emphasis in original). Actually, it was just the opposite. Page 4 of NCS's Opening Brief, which Nine cites, states: "The term 'internal diameter,' when used in the petroleum drilling industry to describe piping, like casing string, can have two meanings..." Dkt. 41, pp. 4-5 (emphasis added). That "internal diameter" has two industry meanings has been NCS's position in every Markman brief. Dkt. 41, pp. 4-5; Dkt. 45, pp. 1-2; Dkt. 48, pp. 1-3. Turning to NCS's summary of extrinsic evidence, it says Dr. Rodgers will opine that "internal diameter" has two industry meanings. The below chart shows the opinion he provided in his declaration supporting NCS's Opening Brief said just that:

1

| NCS's Summary Disclosure | Dr. Rodgers' Declaration |
|---|---|
| "Dr. Rodgers will also opine…that a POSITA would be familiar with two common definitions widely used in the oil industry: 1) the measure of the diameter of the circular cross section of the inside of a tubular or pipe, or 2) the interior surface of a tubular. The first definition is used in the context of a quantifiable size or dimension. The second definition is used with reference to the internal surface such as in describing features, contacts, or sealing engagement." Dkt. 51-3, p. 8. | "The term 'internal diameter' or ID is commonly used in the oilfield industry. Its meaning can vary based on the context in which it is used. One meaning [of internal diameter] is the interior cylindrical surface of the casing." Dkt. 41-1, ¶ 41.<br><br>"ID or internal diameter can also refer to a length measurement of the diameter of a circular cross-section cut perpendicular to the axis of the inside of a component of the casing….One of skill in the art can readily determine how 'ID' or 'internal diameter' is being used based in the context of the usage." *Id.*, ¶ 43. |

Consistent with Dr. Rodgers' opinion, NCS has never argued "internal diameter" has one industry meaning.

>   2. Nine knew what Dr. Rodgers would say about the references he disclosed on "internal diameter."

Nine argues that NCS's disclosure of extrinsic evidence did not tell Nine what Dr. Rodgers would say about the references he cited or how they supported NCS's positions on "internal diameter." Dkt. 51, p. 2. NCS's disclosure fully complied with the Court's OGP. The Court's OGP did not require NCS summarize references in the extrinsic evidence disclosure. It required NCS identify and produce each of its supporting extrinsic references, which NCS did and which Nine does not dispute. In its disclosure, NCS listed several references supporting Dr. Rodgers's opinion that "internal diameter" has two industry meanings. Dkt. 51-3, pp. 15-16. These references say what they say. If Nine read them, it would know they use "internal diameter" to refer to the Sidewall Definition, consistent with NCS's summary of Dr. Rodgers's opinions. There is no question that on October 16 Nine was on notice of Dr. Rodgers's opinion that "internal diameter" has two meanings in the oil and gas industry, and that he had references

2

that supported that position.

> 3. Nine cannot plausibly argue it lacked notice about NCS's reliance on the claim <u>language for claim construction</u>.

Nine argues that it had no notice that NCS would argue the claim term "internal diameter that defines a fluid passageway" is relevant to the construction of "internal diameter." Dkt. 51, p. 2. Nine's position borders on frivolous. Does Nine actually have to be told NCS would rely on the claim language for claim construction? NCS was not obligated to summarize its arguments based on the **intrinsic** record. It was obligated to disclose extrinsic evidence and summarize its expert's opinions, which NCS did. This term is in all claims. Of course NCS would be relying on it for claim construction, because the claim language itself is the most relevant evidence of claim meaning. Nine knew about this claim language. There is no question that Dr. Meehan testified this language does not refer to a measured diameter, which contradicts Nine's claim construction position, and Nine is now trying to clean that up with an improper supplemental declaration.

> 4. Nine's attack of Dr. Rodgers' opinion on "sealing engagement" is not relevant to <u>whether Dr. Meehan's opinions were untimely.</u>

Nine says that NCS's summary of Dr. Rodgers' opinion on "sealing engagement" is inconsistent with his later-served declaration. It is not inconsistent. In any case, this is a red herring as NCS's motion to strike does not relate to Dr. Meehan's opinion on the scope of the term "sealing engagement."

## B. Nine asks the Court to ignore Federal Circuit precedent and local patent rule language that is nearly identical to this Court's OGP.

Nine admits that "the procedure of this case is governed by the Court's *Order Governing Proceedings*," (Dkt. 51, p. 5 (emphasis in original)) yet still asks this Court to ignore case law interpreting local patent rules that are nearly identical to this Court's OGP:

3

| SDTX Rule | EDTX Rule | OGP |
|---|---|---|
| At the same time the parties exchange their respective "Preliminary Claim Constructions," they must also exchange a preliminary identification of extrinsic evidence they contend supports their respective claim constructions, such as dictionary definitions, citations to learned treatises and prior art, and testimony of fact and expert witnesses. The parties must identify each item of extrinsic evidence by production number or produce a copy of any such item not previously produced. With respect to each fact or expert witness a party intends to rely on for claim construction, the party must also provide a brief description of the substance of that witness's proposed testimony.<br><br>Dkt. 47-1, pp. 10-11. | At the same time the parties exchange their respective "Preliminary Claim Constructions," they shall each also provide a preliminary identification of extrinsic evidence, including without limitation, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses they contend support their respective claim constructions or indefiniteness positions. The parties shall identify each such item of extrinsic evidence by production number or produce a copy of any such item not previously produced. With respect to any such witness, percipient or expert, the parties shall also provide the identity and a brief description of the substance of that witness' proposed testimony.<br><br>*See* Exhibit A. | The parties shall disclose any extrinsic evidence, including the identity of any expert witness they may rely upon with respect to claim construction or indefiniteness. With respect to any expert identified, the parties shall also provide a summary of the witness's expected testimony including the opinions to be expressed and a general description of the basis and reasons therefore. A failure to summarize the potential expert testimony in a good faith, informative fashion may result in the exclusion of the proffered testimony. With respect to items of extrinsic evidence, the parties shall identify each such item by production number or produce a copy of any such item if not previously produced.<br><br>Dkt. 20, p. 7; Dkt. 25, p. 2. |

Nine's only explanation is that "this case is not in any of those jurisdictions, and as the Court well knows, it has not adopted local patent rules *at all*." Nine knows that district court opinions on identical issues are helpful to the Court. That this Court does not have a formal document titled "Local Patent Rules," but rather issued an "Order Governing Proceedings," is a distinction without merit where the substance of the three courts' rules are identical.

Using the same logic, Nine also wants this Court to ignore Federal Circuit precedent which holds that the purpose of patent rules, like this Court's OGP, is to "require the parties to crystallize their theories of the case early in the litigation so as to prevent a shifting sands

4

approach to claim construction." Dkt. 51, p. 4; *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987 FMS, 1998 U.S. Dist. LEXIS 17564, at *7 (N.D. Cal. 1988). Shifting sands is exactly what is happening here—Nine's expert made admissions during his deposition that contradict Nine's indefiniteness arguments, and Nine is trying to cure those through Dr. Meehan's untimely rebuttal declaration and submissions of dozens of new references.

**C. Nine's citations to WDTX cases are inapposite.**

Nine cites to four WDTX cases for the proposition that "[p]arties in this Court have repeatedly presented supplemental expert testimony and extrinsic evidence for consideration by the Court without issue." Dkt. 51, p. 4. That the parties in those cases filed supplemental declarations is not relevant to whether Nine's supplemental declaration is improper for failing to timely disclose extrinsic evidence, including **50** new references.

**D. NCS has suffered prejudice as a result of Nine's untimely disclosure.**

Nine's supplemental declaration cited 50 new references, and Nine did not serve them until November 30. Nine argues that NCS should have conducted a second deposition of Dr. Meehan on his supplemental declaration and these several new references. Dkt. 51, pp. 6-7. NCS should not have to bear the burden and cost of examining dozens of late references and a second deposition because Nine failed to timely disclose its extrinsic evidence. A second deposition would undoubtedly be an effort by Nine to further walk-back the admissions Dr. Meehan made in his first deposition that contradict Nine's claim construction positions.

Nine also argues that NCS should have presented its own supplemental report. However, whether NCS should or should not have supplemented its expert report is not relevant to whether Nine violated the rules by failing to timely disclose extrinsic evidence.

Dated:  December 21, 2020

Respectfully submitted,

*/s/ Domingo M. LLagostera*
**Domingo M. LLagostera**
(*Attorney-in-charge*)
State Bar No. 24070157
Tel.: (713) 632-8682
Fax: (713) 228-6605
DLLagostera@BlankRome.com
**Russell T. Wong**
State Bar No. 21884235
RWong@BlankRome.com
Tel.: (713) 632-8634
Fax: (713) 228-6605
**Munira Jesani**
State Bar No. 24101967
MJesani@BlankRome.com
717 Texas Avenue, Suite 1400
Houston, TX 77002
Tel.: (713) 632-8628
Fax: (713) 228-6605

**Andrew K. Fletcher** *(admitted pro hac vice)*
PA State ID. 75544
AFletcher@BlankRome.com
501 Grant Street, Suite 850
Pittsburgh, PA 15219
Tel: (412) 932.2736

**ATTORNEYS FOR PLAINTIFF NCS MULTISTAGE INC.**

### CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record were electronically served with a copy of the foregoing on December 21, 2020 via the Court's ECF system.

*/s/ Munira Jesani*
Munira Jesani