**FILED**

January 21, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Jennifer Clark_____

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| NCS MULTISTAGE INC.,<br>NCS MULTISTAGE, LLC, | § <br> § <br> § | |
| Plaintiffs, | § | |
| vs. | § | CIVIL ACTION NO. 6:20-cv-00277-ADA |
| | § | |
| NINE ENERGY SERVICE, INC., | § <br> § | |
| Defendant. | § <br> § | |

## POST-EVIDENCE JURY INSTRUCTIONS



1

# POST-EVIDENCE JURY INSTRUCTIONS

## POST-INSTRUCTION NO. 1
## SUMMARY OF PARTIES' CONTENTIONS

As Judge Manske did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As Judge Manske previously told you, NCS seeks money damages from Nine for allegedly infringing the '445 patent by making, using, selling, and offering for sale its BreakThru™ Casing Floatation Devices that NCS argues are covered by claims 28-29, 36, 39, 50-52, and 55-57, which I have referred to as the "Asserted Patent Claims." NCS also argues that Nine has actively induced infringement of these claims of the '445 patent by others. The products and methods that are alleged to infringe are Nine's BreakThru™ Casing Floatation Devices—which I will refer to as the BreakThru devices—and the use of the BreakThru devices to float casing.

Nine denies that it has infringed the Asserted Patent Claims and argues that, in addition, the claims are invalid.

Your job is to decide whether Nine has infringed the Asserted Patent Claims and whether any of the Asserted Patent Claims are invalid. If you decide that at least one of the Asserted Patent Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to NCS to compensate it for the infringement.

## POST-INSTRUCTION NO. 2
## THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because the words of the claims define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is separate and may cover more or less than another claim. Therefore, what a patent covers depends on what each of its claims covers. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim- by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims that are disputed. By understanding the meaning of the words in a claim and that the words in a claim set forth the requirements that must be met in order to be covered by that claim, you will be able to understand the

3

scope of coverage for the claim. Your role is to apply my definitions of those terms to the issues that you are asked to decide in this case. Therefore, as Judge Manske explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of those terms. You can find those definitions in the juror notebooks I have given you. I have provided you with a table that recites each one of the Asserted Patent Claims, and for each claim, the definitions of certain terms in those claims. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion of a claim is known as the preamble. The preambles of the asserted claims do not limit the scope of the claims. Instead, they merely state an intended purpose of the claimed invention. In other words, even if the preambles appear to contain requirements that define the invention, you should ignore such apparent requirements in evaluating NCS's arguments that those claims are infringed and Nine's arguments that the claims are invalid. The preamble of a claim may also use the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

**POST-INSTRUCTION NO. 3**
**INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, Asserted Patent Claims 28 and 50 of the '445 patent are each independent claims.

The remainder of the Asserted Patent Claims are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

## POST-INSTRUCTION NO. 4
## CLAIM CONSTRUCTION

As I explained previously, it is my job as the judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.  These definitions also appear in your juror notebook.

**"casing string" (Claims 28, 50, 51, 55)**

As used in the '445 patent, the term "casing string" shall mean "pipe that is customarily $\geq 4$.5 inches in outer diameter, which is intended to line the walls of a drilled well so that a downhole tool can be deployed without restriction."

**"internal diameter" (Claims 28, 50)**

As used in the '445 patent, the term "internal diameter" shall have its plain and ordinary meaning where the plain and ordinary meaning can refer to both an inner surface and a measured diameter.

**"tubular member" (Claims 28, 50)**

As used in the '445 patent, the term "tubular member" shall have its plain and ordinary meaning.

**"sealing engagement" (Claims 28, 50, 55)**

As used in the '445 patent, the term "sealing engagement" shall mean "a substantially fluid-tight seal."

6

**"rupturing force" (Claims 56, 57)**

As used in the '445 patent, the term "rupturing force" shall mean "a hydraulic pressure or impact force sufficient to rupture the rupture disc."

**"the rupture disc is ... configured to rupture when exposed to a rupturing force greater than the rupture burst pressure" (Claims 29, 56)**

As used in the '445 patent, the phrase "the rupture disc is ... configured to rupture when exposed to a rupturing force greater than the rupture burst pressure" shall mean "the rupture disc can rupture when exposed to a rupturing hydraulic pressure greater than the rupture burst pressure."

**"the region of the tubular member where the rupture disc is attached has a larger internal diameter than the internal diameter of the casing string and is parallel to the internal diameter of the casing string" (Claims 28, 50)**

As used in the '445 patent, the phrase "the region of the tubular member where the rupture disc is attached has a larger internal diameter than the internal diameter of the casing string and is parallel to the internal diameter of the casing string" shall have its plain and ordinary meaning where the plain and ordinary meaning is "in the region of the tubular member, the rupture disc is directly secured to and in sealing engagement with a cylindrical surface that is wider than and parallel to the inner surface of the casing string."

**"specific gravity ... of the well fluid" (Claim 52)**

As used in the '445 patent, the term "specific gravity ... of the well fluid" shall have its plain and ordinary meaning.

**"rupture disc is configured to disengage from sealing engagement when exposed to a pressure greater than a hydraulic pressure in the casing string" (Claims 28 and 50)**

As used in the '445 patent, the phrase "rupture disc is configured to disengage from sealing engagement when exposed to a pressure greater than a hydraulic pressure in the casing string" shall have its plain and ordinary meaning, wherein the term "disengage from sealing engagement" means "before rupturing, move the rupture disc downhole relative to the region."

**"disengage the rupture disc from sealing engagement" (Claim 55)**

As used in the '445 patent, the phrase "disengage the rupture disc from sealing engagement" shall mean "before rupturing, move the rupture disc downhole relative to the region."

**"a pressure ... greater than a hydraulic pressure in the casing string" (Claims 28, 50, & 55)**

As used in the '445 patent, the phrase "a pressure . . . greater than a hydraulic pressure in the casing string" shall mean "an applied pressure that is greater than the hydrostatic pressure in the casing string."

## POST-INSTRUCTION NO. 5
## INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not NCS has proven that Nine has infringed at least one of the Asserted Patent Claims. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are two possible ways that a claim may be infringed: (1) direct infringement and (2) active inducement of another to infringe. Active inducement is a type of indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. In this case, NCS has alleged that Nine directly infringes the Asserted Patent Claims. In addition, NCS has alleged that Nine is liable for actively inducing direct infringement by others, namely, Nine's customers.

In order to prove infringement, NCS must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

9

## POST-INSTRUCTION NO. 6
## DIRECT INFRINGEMENT

In order to prove direct infringement, NCS must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Nine made, used, sold, or offered for sale within, or imported into the United States a product or process that meets all of the requirements of a claim and did so without the permission of NCS during the time the '445 patent was in force. You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product or process meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

10

## INDIRECT INFRINGEMENT – INDUCED INFRINGEMENT

NCS also alleges that Nine is liable for infringement by actively inducing others to directly infringe the Asserted Patent Claims literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Nine is liable for active inducement of a claim only if NCS proves by a preponderance of the evidence:

(1)     the acts that are actually carried out by Nine's customers pursuant to their use of the BreakThru™ Casing Flotation Devices directly infringe that claim;

(2)     Nine took action during the time the '445 patent was in force that was intended to cause and led to the infringing acts by Nine's customers; and

(3)     Nine was aware of the '445 patent and knew that the acts, if taken, would constitute infringement of that patent.

If you find that Nine was aware of the patent, but believed that the acts it encouraged did not infringe that patent, Nine cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that any Nine customer itself directly infringes the claim. Nor is it sufficient that Nine was aware of the act(s) by its customers that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Nine specifically intended its customers to infringe at least one of the Asserted Patent Claims or that Nine believed there was a high probability that its

11

customers would infringe at least one of the Asserted Patent Claims, but deliberately avoided learning the infringing nature of its customers' acts. The mere fact, if true, that Nine knew or should have known that there was a substantial risk that its customers' acts would infringe at least one of the Asserted Patent Claims would not be sufficient to support a finding of active inducement of infringement.

Nine's alleged belief in the invalidity of the '445 Patent is not a defense to inducement. In other words, Nine cannot rely on its alleged belief that the '445 Patent was or is invalid to show it did not intend to cause infringing acts by its customers.

## POST-INSTRUCTION NO. 8
## INVALIDITY – GENERALLY

I will now instruct you on the rules you must follow in deciding whether or not Nine has proven that the Asserted Patent Claims are invalid. To prove that any claim of a patent is invalid, Nine must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid. As I explained to you before, the clear and convincing standard is a higher burden of proof than a preponderance of the evidence, but lower than the reasonable doubt standard in criminal cases

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. You must determine whether the references or products presented by Nine as part of its invalidity case are prior art that can be considered in determining whether the Asserted Patent Claims are anticipated or obvious. Prior art may include items that were publicly known or were offered for sale or publicly used, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

## POST-INSTRUCTION NO. 9
## INVALIDITY – ESTABLISHING PRIOR ART

In this case, Nine alleges that the following references qualify as prior art to the '445 Patent:

- U.S. Patent Number 5,479,986, which I will refer to as "Gano"

- U.S. Patent Number 5,829,526, which I will refer to as the "Rogers Patent"

- Article entitled "Buoyancy Assist Extends Casing Reach in Horizontal Wells" by H.E. Rogers, D.L. Bolado, and B.L. Sullaway, which I will refer to as the "Rogers Publication"

- a TDP-PO tool, allegedly offered for sale by TCO AS to Eversolve in 2011, which I will refer to as "the Alleged TDP-PO Sold to Eversolve"

- a TDP-PO tool, allegedly offered for sale by TCO AS to Apache in 2012, which I will refer to as "the Alleged TDP-PO Sold to Apache"

- a TDP-PO tool, allegedly used by Apache in 2013, which I will refer to as "the Alleged TDP-PO Used by Apache"

NCS does not dispute that Gano, the Rogers Patent, and the Rogers Publication are prior art, and thus you can assume these references are prior art references.

With respect to the Alleged TDP-PO Sold to Eversolve, the Alleged TDP-PO Sold to Apache, and the Alleged TDP-PO Used by Apache, the parties dispute whether those events are

14

prior art. It is Nine's burden to establish by clear and convincing evidence that these alleged references qualify as prior art. Based on that standard you must decide whether those items are prior art, before considering them as prior art.

### The Alleged TDP-PO Sold to Eversolve:

With respect to the Alleged TDP-PO Sold to Eversolve, for this to qualify as prior art, Nine must show by clear and convincing evidence that TCO AS sold or offered for sale a tool to Eversolve and the features of that tool. A product was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described in drawings or other descriptions sufficiently specific such that a person having ordinary skill in the field of the technology could have made and used the product, even if it was not yet reduced to practice or publicly disclosed. If Nine relies on oral testimony to establish either that there was an offer for sale or sale of a tool and what specifically that tool was, Nine must support that oral testimony with reliable corroborating evidence, such as documents.

If Nine cannot make these showings, the Alleged TDP-PO Sold to Eversolve is not prior art to the patent and thus cannot be applied to invalidate any claims.

15

**The Alleged TDP-PO Sold to Apache:**

(1) With respect to the Alleged TDP-PO Sold to Apache, Nine must show by clear and convincing evidence that TCO AS sold or offered for sale a tool to Apache and the features of that tool.   A product was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described in drawings or other descriptions sufficiently specific such that a person having ordinary skill in the field of the technology could have made and used the product, even if it was not yet reduced to practice or publicly disclosed.  If Nine relies on oral testimony to establish either that there was an offer for sale or sale and what specifically that tool was, Nine must support that oral testimony with reliable documentary evidence.  If Nine cannot make these showings in (1), the Alleged TDP-PO Sale by Apache is not prior art to the patent and thus cannot be applied to invalidate any claims.

(2) If Nine meets its burden under (1), NCS can exclude subject matter in the TDP-PO sold to Apache from being considered as prior art if NCS provides sufficient evidence that it publicly disclosed that subject matter first.  Subject matter is publicly disclosed if it is disclosed to a member of the public interested in the art who is not under any limitation, restriction, or obligation to maintain the disclosure's secrecy. The burden then shifts to Nine to show by clear and convincing evidence that the subject matter publicly disclosed by NCS was not the same as the subject matter disclosed in the TDP-PO.

16

For example, if you find that NCS sold its casing floatation tool in July 2012 and publicly disclosed details A, B, and C; that the TDP-PO was sold by TCO to Apache in December 2012; and that the TDP-PO disclosed details A, B, C, and D, then details A, B, and C in the TDP-PO sold to Apache are not available as prior art.  In other words, Nine cannot assert as prior art any details that were previously publicly disclosed by NCS.

**The Alleged TDP-PO Used by Apache:**

(1) With respect to the Alleged TDP-PO Used by Apache, Nine must show by clear and convincing evidence that the tool was accessible to the public or commercially exploited, and ready for patenting.  Factors relevant to determining whether a use was public include the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.  To the extent Nine relies on oral testimony to establish either that there was a use or what specifically was used, Nine must corroborate that oral testimony with reliable documentary evidence. If Nine cannot make these showings in (1), the Alleged TDP-PO Used by Apache is not prior art to the patent and thus cannot be applied to invalidate any claims.

17

(2) If Nine meets its burden under (1), NCS can exclude subject matter in the TDP-PO used by Apache from being considered as prior art if NCS provides sufficient evidence that it publicly disclosed that subject matter first.  Subject matter is publicly disclosed if it is disclosed to a member of the public interested in the art who is not under any limitation, restriction, or obligation to maintain the disclosure's secrecy. The burden then shifts to Nine to show by clear and convincing evidence that the subject matter publicly disclosed by NCS was not the same as the subject matter disclosed in the TDP-PO.

For example, if you find that NCS sold its casing floatation tool in July 2012 and publicly disclosed details A, B, and C; that the TDP-PO was used by Apache in January 2013; and that the TDP-PO disclosed details A, B, C, and D, then details A, B, and C in the TDP-PO used by Apache are not available as prior art.  In other words, Nine cannot assert as prior art any details that were previously publicly disclosed by NCS.

## POST-INSTRUCTION NO. 10
## INVALIDITY – ANTICIPATION

Once you have determined that a reference is prior art, i.e. that it came before the '445 Patent, then you must decide whether that reference invalidates the Asserted Patent Claims. In order for someone to be entitled to a patent, the invention must actually be "new." Nine contends that the Asserted Patent Claim 28 and 29 are invalid because the claimed inventions are anticipated, that is not new. Nine must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Specifically, Nine contends that the following pieces of prior art anticipate the Asserted Patent Claim 28 and 29:

1. Gano

2. The Alleged TDP-PO Sold to Eversolve

3. The Alleged TDP-PO Sold to Apache

4. The Alleged TDP-PO Used by Apache

Anticipation must be determined on a claim-by-claim basis. Nine must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. You must determine whether the claim requirements are disclosed expressly

19

such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Nine is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

## POST-INSTRUCTION NO. 11
## OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent before the filing date of the patent.

Nine may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the patent was filed in the field of horizontal well construction and downhole tools in the oil and gas industry. Nine alleges the Asserted Patent Claims are obvious over the following references or combinations of references:

1. Gano in View of the Rogers Patent Renders Obvious Claims 28-29, 36, 39, 50-52, and 55-57 of the '445 Patent.

2. TCO TDP-PO Plug in View of the Rogers Patent Renders Obvious Claims 28-29, 36, 39, 50-52, and 55-57 of the '445 Patent.

3. Gano in View of the Rogers Publication Renders Obvious Claims 28-29, 36, 39, 50-52, and 55-57 of the '445 Patent.

4. TCO TDP-PO Plug in View of the Rogers Publication Renders Obvious Claims 28-29, 36, 39, 50-52, and 55-57 of the '445 Patent.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the patent was filed, the scope and content of the prior art, any differences between the prior art and the

21

claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly.

Do not use hindsight; consider only what was known at the time of the patent's filing date.

Level of Ordinary Skill:

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

Scope and Content of the Prior Art

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

22

Where Nine is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

### Differences Between the Prior Art and the Claimed Inventions

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, at the time of the patent's filing date, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; or (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

<u>Secondary Considerations of Non-Obviousness:</u>

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the claimed invention satisfied a long-felt need;

c. Whether others sought or obtained rights to the patent from the patent holder;

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

## POST-INSTRUCTION NO. 12
## DAMAGES

If you find that Nine infringed at least one Asserted Patent Claim and that claim is not invalid, you must then consider what amount of damages to award to NCS. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Nine has not infringed any valid claim of the patent, then NCS is not entitled to any damages.

The damages you award must be adequate to compensate NCS for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put NCS in approximately the same financial position that it would have been in had the infringement not occurred.

NCS has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that NCS establishes that it more likely than not has suffered. While NCS is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that NCS may be entitled to recover. In this case, NCS seeks a reasonable royalty. A reasonable royalty is defined as the money amount NCS and Nine would have agreed upon as a fee for use of the invention at the time just prior to when

25

infringement began. You must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that NCS is entitled to recover no less than a reasonable royalty for each infringing sale.

## POST-INSTRUCTION NO. 13
## REASONABLE ROYALTY

If you find that at least one Asserted Patent Claim is infringed and not invalid, NCS is

entitled to at least a reasonable royalty to compensate it for that infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or

sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent

holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at

a time prior to when the infringement first began. In considering this hypothetical negotiation,

you should focus on what the expectations of the patent holder and the alleged infringer would

have been had they entered into an agreement at that time, and had they acted reasonably in their

negotiations. In determining this, you must assume that both parties believed the patent was valid

and infringed and that both parties were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the

hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of

things that happened after the infringement first began can be considered in evaluating the

reasonable royalty only to the extent that the evidence aids in assessing what royalty would have

resulted from a hypothetical negotiation just prior to the first infringement.

In determining the reasonable royalty, you should consider all the facts known and

available to the parties at the time the infringement began. Some of the kinds of factors that you

may consider in making your determination are:

27

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

28

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

## POST-INSTRUCTION NO. 14
## DAMAGES – COMPARABLE AGREEMENTS

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

30

## POST-INSTRUCTION NO. 15
## DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that Nine has both infringed and been notified of the alleged infringement of the '445 patent:

If you find that a product has been sold or licensed, by NCS or a third party, that includes the claimed invention, you must determine whether that product has been "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. The marking requirement may also be satisfied by including with the product an internet address to a posting that associates the patented articles with the number of the applicable patents. NCS has the burden of establishing that it substantially complied with the marking requirement. This means NCS must show that substantially all of the products made, offered for sale, or sold under the '445 patent have been marked and that reasonable efforts were made to ensure that licensees who made, offered for sale, or sold products under the '445 patent marked the products.

If you find that NCS has marked its products with the '445 Patent, then you must find that NCS began accruing damages on the date NCS first marked its products.  NCS alleges that date is November 5, 2019.

If you find that NCS has not marked practicing products with the patent number, or if any licensees were not required to mark practicing products, then you must find that NCS began accruing

31

damages on the date NCS first provided Nine with actual notice of the '445 Patent.  Nine stipulates its date of first actual notice is December 16, 2019.